Wade TENNYSON et al., Plaintiffs-
Appellants,

v.

GAS SERVICE COMPANY, and Kansas
Gas and Electric Company, Defend-
ants-Appellees.

No. 73–1930.

United States Court of Appeals,
Tenth Circuit.

Argued Aug. 19, 1974.

Decided Nov. 26, 1974.

Michael D. Gragert, Wichita, Kan. (Thomas A. Wood, Wichita, Kan., on the brief), for plaintiffs-appellants.

Donal D. Guffey, Kansas City, Mo. (Richard C. Byrd, Ottawa, Kan., on the brief), for defendant-appellee Gas Service Co.

Robert A. Vohs, Wichita, Kan. (Ralph B. Foster, Wichita, Kan., on the brief), for defendant-appellee Kansas Gas and Elec. Co.

Before HILL and DOYLE, Circuit Judges, and TALBOT SMITH,* Senior District Judge.

TALBOT SMITH, Senior District Judge.

The action before us was brought February 21, 1973 under the Civil Rights Act of 1871, 42 U.S.C. § 1983. It was brought as a class action and relates to the so-called "late charge assessments" made by defendants Gas Service Company and Kansas Gas and Electric Company (hereinafter K.G. & E.). These late charge assessments impose an additional charge upon certain customers for failure to pay the amount due on the regular billing within a specified number of days. Plaintiffs alleged that such practice violates due process of law, that it is violative of their equal protection and that the late charges imposed are "usurious interest."[1] they sought declaratory and injunctive relief, as well as an accounting and money damages.

The defendants moved the court to dismiss the action on the ground that 28 U.S.C. § 1342 (the Johnson Act) removed the court's jurisdiction in the premises. In addition, defendant Gas Service cited as grounds for its motion

---

* TALBOT SMITH, United States Senior District Judge, Eastern District of Michigan, sitting by designation.

1. Specifically, the complaint alleged violations of the Fourth, Fifth and Fourteenth Amendments of the United States Constitution, Sections 1, 15 and 18 of the Bill of Rights of the Kansas Constitution, and the laws of Kansas set forth in Kan. S.A. 66–107 et seq. & 16–201 et seq. (1972).

Jurisdiction was claimed to be based upon 42 U.S.C. § 1983; 28 U.S.C. § 1343(3), (4); 28 U.S.C. § 2201 et seq.; Fed.R.Civ.P. 23; §§ 1, 15 and 18 of the Bill of Rights of the Kansas Constitution; and Kan. S.A. 66–107 et seq., & 16–201 et seq. (1972).

that the complaint did not state a claim under the Civil Rights Act and, moreover, that plaintiffs had failed to join an indispensable party, the Kansas Corporation Commission. The plaintiffs, in turn, moved the court "to dismiss the Defendants' Motions to Dismiss." Both sides supported their motions with voluminous materials thought to be supportive of their respective positions. The trial court, following (with some reluctance) our holding in General Investment and Service Corp. v. Wichita Water Co., 236 F.2d 464 (10th Cir. 1956) granted the defendants' motions to dismiss upon the ground that its jurisdiction was precluded by the terms of the Johnson Act. We agree.

The Johnson Act provides:

The district courts shall not enjoin, suspend or restrain the operation of, or compliance with, any order affecting rates chargeable by a public utility and made by a State administrative agency or a rate-making body of a State political subdivision, where:

(1) Jurisdiction is based solely on diversity of citizenship or repugnance of the order to the Federal Constitution; and,

(2) The order does not interfere with interstate commerce; and

(3) The order has been made after reasonable notice and hearing; and,

(4) A plain, speedy and efficient remedy may be had in the courts of such State.

The plaintiffs, denominating it the "focal point" of their appeal, argue principally that the legislative history of the Johnson Act makes clear that the Act "was never intended to apply to cases of the present character," *i. e.* consumer class actions, and urge that we overrule our prior decision in the *General Investment* case.[2]

We thus consider again the problem of federal intervention in state rate matters. The problem has had a long and troublesome history. The evil sought to be remedied by the Johnson Act was the federal courts' interference with the states' own control of their public utility rates. Mr. Justice Frankfurter traced the background of the legislation in the following terms:[3]

In Congress, a prolonged debate has ensued over the wisdom of the broad grants of power made to the Federal courts of original jurisdiction—power which may be invoked against State regulation of economic enterprise. Bill after bill has been proposed to prevent the lower federal courts from interfering with such State action. Finally, in 1910, by a provision in the Mann-Elkins Act, Congress provided that an action for an interlocutory injunction to restrain the action of a State officer acting under a statute alleged to violate the Federal Constitution be heard by a court of three judges, with a right of direct appeal to the Supreme Court. Act of June 18, 1910, § 17, 36 Stat. 539, 557. In 1913, this procedure was extended to applications for an interlocutory injunction to restrain enforcement of the order of a State board or commission. Act of March 4, 1913, 37 Stat.

2. In *General Investment*, the plaintiff, for itself and all other customers similarly situated, sought declaratory and injunctive relief, asserting that the collection of an allegedly discriminatory surcharge on defendant's water rate violated plaintiff's due process rights. Summary judgment was entered in favor of the defendant. On appeal this court held, after examining the provisions of the Johnson Act and discussing principles of comity "under our dual system of Government in cases involving state laws, rules or regulations," 236 F.2d at 468, that "the federal court lacked jurisdiction to entertain the action for an injunction and for a declaratory judgment," 236 F.2d at 466, and that the lower court should have "dismissed the action without considering the merits and relegated the parties to the state court," 236 F.2d at 468.

3. Concurring in result in Alabama Pub. Serv. Comm'n v. Southern Ry., 341 U.S. 341, 357–358, 71 S.Ct. 762, 772–773, 95 L.Ed. 1016 (1951). *See also* (Professor) Frankfurter, Distribution of Judicial Power Between United States and State Courts, 13 Cornell L.Q. 499 (1928).

1013. By the same statute, a State was empowered to keep litigation concerning the validity of State agency regulation in its own courts if it was willing to stay the administrative order. In 1925, the provision for a three-judge court and direct appeal was extended to a permanent injunction. Act of Feb. 13, 1925, c. 229, § 1, 43 Stat. 936, 938.

Congress, fully aware of the problem, was still not satisfied with the jurisdiction it had left to the federal district courts. *Accordingly, in 1934, it passed the Johnson Act which withdrew their jurisdiction over suits to enjoin the enforcement of State rate orders, providing that a remedy was available in the State courts.* [Emphasis added; footnote omitted.] [4]

 Plaintiffs argue to us that the "sole" purpose of the Act was to prevent forum-shopping by utilities between State and Federal courts, a practice that had bedeviled the administration of the rate structures of the various states. Doubtless this was one purpose. But we find no substantial support that the Act is to be so restricted. Rather, by its broad wording it is clear that it was intended to keep constitutional challenges to orders affecting rates out of the federal courts "lock, stock and barrel," or, as Professor Moore succinctly puts it, to effect a "general hands-off policy relative to state rate making." [5] The Act is not framed in terms of categories of plaintiffs, whether municipalities, state commissions, utilities or consumers, but in terms of enumerated conditions. Behind the Act were years of hostilities generated from jurisdiction in both the state and federal systems, removal of which was deemed desirable to the national policy. Thus the restriction imposed was far-reaching, going to jurisdiction itself. Should it be thought desirable to resurrect the federal jurisdiction in favor of any particular class or group, such is a matter for the Congress, not for this court. We do not find the *General Investment* decision or the ruling below to be oblivious to the intended purposes of the Act.[6] Indeed, these purposes are peculiarly served here, for the late charge issue has recently (April 16, 1974) been ruled on by the Kansas State Corporation Commission in a proceeding involving both defendants.[7]

Plaintiffs next seek to avoid the proscription of the Johnson Act by basing their claimed jurisdiction and framing their prayer for relief in terms not only of injunctive relief, which is specifically prohibited by the Act, but for declaratory and monetary relief as well. Congress has prohibited federal injunctive interference not only with state rate-making but with state tax matters. 28 U.S.C. § 1341 provides:

The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and

---

4. The history of the Johnson Act is exhaustively discussed in 44 Yale L.J. 119 (1934) and 20 Iowa L.Rev. 128 (1934) ; see also 1A J. Moore, Federal Practice ¶ 0.206 (1974).

5. 1A J. Moore, Federal Practice ¶ 0.206, at 2282 (1974).

6. We are referred to no authority specifically dispositive of the issue presented. Defendants' cited case of David v. N. Y. Tel. Co., 341 F.Supp. 944, 947 (S.D.N.Y.), aff'd on other grounds, 470 F.2d 191 (2nd Cir. 1972), a consumer's class action, most nearly parallels the case before us. As an alternate ground for the dismissal of the action, the court found itself without jurisdiction under the Johnson Act.

7. Defendant K.G. & E., submits as Attachment A to its brief on appeal the Order of the State Corporation Commission "In the matter of the Complaint against Kansas Gas and Electric Company and the Gas Service Company, Defendants, by Lola B. Jones and Marie R. Wilson, Complainants," Docket No. 96,137–U. (The complaint in this proceeding, dated August 4, 1972, was submitted with defendant K.G. & E.'s Motion to Dismiss in the trial court.) The commission held that defendants' late charges were neither usurious under Kan.S.A. 16–201 nor unreasonable under Kan.S.A. 66–107. We reproduce substantial and relevant portions of the commission's ruling as an Appendix hereto.

efficient remedy may be had in the courts of such State.

The language and history of this provision parallel the Johnson Act.[8] With respect to its interpretation it was held in Great Lakes Dredge & Dock Co. v. Huffman, 319 U.S. 293, 298–299, 63 S.Ct. 1070, 1073–1074, 87 L.Ed. 1407 (1943) that:

> The earlier refusal of federal courts of equity to interfere with the collection of state taxes unless the threatened injury to the taxpayer is one for which the state courts afford no adequate remedy, and the confirmation of that practice by Congress, have an important bearing upon the appropriate use of the declaratory judgment procedure by the federal courts as a means of adjudicating the validity of state taxes.
>
> It is true that the Act of Congress speaks only of suits "to enjoin, suspend, or restrain the assessment, levy, or collection of any tax" imposed by state law, and that the declaratory judgment procedure may be, and in this case was, used only to procure a determination of the rights of the parties, without an injunction or other coercive relief. It is also true that that procedure may in every practical sense operate to suspend collection of the state taxes until the litigation is ended. But we find it unnecessary to inquire whether the words of the statute may be so construed as to prohibit a declaration by federal courts concerning the invalidity of a state tax. For we are of the opinion that those considerations which have led federal courts of equi-

ty to refuse to enjoin the collection of state taxes, save in exceptional cases, require a like restraint in the use of the declaratory judgment procedure.

■ It is equally true in the area before us that the considerations which we have briefly considered as influencing the Congressional hands-off policy relating to rate making are not to be defeated by the use of either the declaratory judgment procedure[9] alone or combined with a claim for money damages.[10] A decision going to the merits of the additional relief claimed would of necessity involve our decision as to the same issues proscribed by the Johnson Act. If favorable to the plaintiffs it would impinge upon duly filed rate schedules and thus would effect indirectly that which the Johnson Act precludes.

The plaintiffs urge also that the charge made by the utilities for failure to pay the amount due within 15 days of the billing is not a "rate" at all but is "interest," and, being interest, is not covered by the Johnson Act which concerns "order[s] affecting rates." The issue presented requires an examination of the theory of, and the procedures followed under, the applicable statutes governing the formulation of "rate" structures. In the State of Kansas the State Corporation Commission, an administrative agency of the State, has been vested with the power and authority to supervise and control public utilities doing business within the state.[11] In such capacity it may investigate, fix, establish and consent to rates charged by public utilities under its jurisdiction.[12]

Within this framework defendant K. G. & E. filed an application with the

8. As noted by Mr. Justice Frankfurter, rate orders and taxation were "two fields where the greatest dissatisfaction with federal jurisdiction existed." Alabama Pub. Serv. Comm'n v. Southern Ry., 341 U.S. 341, 358–359, 71 S.Ct. 762, 773, 95 L.Ed. 1016 (1951) (concurring in result).

9. The declaratory judgment act does not, of itself, contain a grant of jurisdiction. It is remedial in scope. C. Wright, Federal Courts § 100, at 449 (2nd ed. 1970); W.

Barron & A. Holtzoff, Federal Practice & Procedure § 1268 (1958).

10. We note that a claim for declaratory relief was rejected in Gen. Inv. & Serv. Corp. v. Wichita Water Co., 236 F.2d 464 (10th Cir. 1956).

11. Kan. S.A. 66–101 (1972).

12. Kan. S.A. 66–107, 66–110, 66–113 & 66–117 (1972).

Kansas State Corporation Commission for authority to increase its rates on June 25, 1971 (Docket 92,581–U). A part of this application concerning a territory "Within the City Limits of Wichita and Eastborough," being rate schedule RSW–771, contained the provisions here under litigation, the so-called "late charges:"

### GROSS MONTHLY BILL

The net monthly bill, computed in accordance with the Net Monthly Rate, plus 5% on the first $200 and 2% on the balance thereof.

### PAYMENT

The net monthly bill is due and payable when rendered; when not not paid within 15 days from date, the Gross Monthly Bill applies.

The Commission's order thereon of June 28, 1972 stated:

3. That with the filing of the above-stated provision,[13] the existing schedules of rates of Applicant will not be unjust, unreasonable, unjustly discriminatory or unduly preferential to the customers affected thereby. [Footnote added.]

The Defendant Gas Service Company relies upon similar authorization by the State Corporation Commission. In its order of February 21, 1968, Docket No. 82,760–U, relative to "[T]he matter of the application of the Gas Service Company for an adjustment of certain of its rates in the State of Kansas," the Commission approved the following provision:

Bills for service shall become delinquent fifteen (15) days after date of the bill or meter reading in case of self billing. If bill becomes delinquent, a 5% penalty charge will be added on the first $200 and 2% on the balance thereafter.

As to whether late charges are "rates" there is a division of authority. Plaintiffs cite to us as supportive of their position that such charges are "interest" a decision of a court of appeals in Louisiana,[14] as well as a law review commentary.[15] Defendants cite to us cases *per contra*.[16] It would serve no useful purpose to analyze these authorities in detail, each decision resting upon its own statutory structure. More useful to us, from a standpoint of the Kansas rate structure, is the State Corporation Commission's recent finding that the "late payment charges in question do not constitute interest * * *." [17]

■■ However such authorities may differ from an actuarial or accounting standpoint, it is pertinent to note that such differentiation does not go to the core of our problem of statutory construction. For the fact of the matter is that the Johnson Act proscribes federal interference not with a "rate" simpliciter but with "any order affecting rates." Since the late charges made were presented to the Commission as an integral part of the rate structures and so ruled upon by the Commission, it is clear that its rulings were orders "affecting" rates within the terms of the Act.

■ With respect to the notice and hearing requirements of the Johnson Act [18] it was the finding of the trial court that "No assertion is made that the orders establishing the late charges were not made after reasonable notice and hearing at state administrative levels." Before us the plaintiffs made general charges of lack of such notice and

---

13. The provision referred to had to do with the billing of a franchise tax.

14. State ex rel. Guste v. Council of City of New Orleans, 297 So.2d 518 (La.Ct.App. 1974).

15. Samuels, Commentary: Utility Late Payment Charges, 19 Wayne L.Rev. 1151 (1973).

16. City of Dearborn v. Consol. Gas. Co., 297 Mich. 388, 297 N.W. 534 (1941) ; Appalachian Elec. Power Co. v. Koontz, 138 W.Va. 84, 76 S.E.2d 863 (1953).

17. See note 7, *supra*.

18. 28 U.S.C. § 1342(3).

hearing, but we find the charges made without support and without merit. The notice and hearing requirement with respect to the making of rates must of necessity be viewed in light of the fact that in Kansas, "In the constitutional division of powers, the regulation of public utilities is legislative in nature." Cities Service Gas Co. v. State Corporation Commission, 201 Kan. 223, 232–233, 440 P.2d 660, 670 (1968). The Johnson Act does not engraft its own undefined standards of notice and hearing upon the rate making bodies of the several states but requires no more than that which is appropriate to an "order affecting rates."

The Johnson Act thus seeming by its terms to be clearly applicable, the remaining question we confront is whether a "plain, speedy and efficient remedy" may be had in the state courts.[19] The court in Mountain States Telephone & Telegraph Co. v. Public Utilities Commission, 345 F.Supp. 80, 82 (D.Colo. 1972) (Doyle, Chilson, & Finesilver, JJ.) held that "[W]e have jurisdiction to proceed only if part 4 of § 1342 requires it, that is, if nonexistence of a plain, speedy and efficient remedy in the courts of the state is shown. As we read the statute, its plain object is to prevent federal courts from intervening in the state rate-making process even though the matter might be repugnant to the Federal Constitution, unless the remedy in state courts is inadequate."[20]

We turn to the remedies in the state courts, set forth in Kan. S.A. 66–101 to 66–195 (1972). In brief summary, such sections provide that a taxpayer may file a complaint with the State Corporation Commission against a utility for a wide range of charges concerning not only the utility's rates, but its charges, rules and regulations.[21] Upon receiving such complaint it is further provided that the Commissioners shall proceed "to make such investigation as they may deem necessary" (Kan. S.A. 66–111 (1972)). Thereafter "The public utility * * * or the complainant or complainants, if any, shall be entitled to be heard" and shall have compulsory process. (Kan. S.A. 66–112 (1972)). It is further provided (Kan. S.A. 66–113 (1972)) that if upon such hearing and investigation the rates, charges, rules or regulations of the utility are found to be unjust, unreasonable, unfair, unjustly discriminatory or unduly preferential, or in any wise in violation of any of the laws of the state of Kansas, the State Corporation Commission shall have the power to fix and establish, and to order substituted therefor, such rates, charges, rules or regulations as it shall find to be just, reasonable and necessary.

The procedures for a subsequent judicial review are found in Kan. S.A. 66–118c to 66–118o (1972). It is therein provided that within 30 days following the Commission's final decision, application may be made to the appropriate district court for a review of the decision.[22]

19. 28 U.S.C. § 1342(4).

20. See also Mountain States Tel. & Tel. Co. v. Pub. Util. Comm'n, 324 F.Supp. 857, 859 (D.Colo.1971) (Lewis, C. J., Chilson, & Bratton, JJ.) : "[W]e find the plaintiff has a plain, speedy, and efficient remedy in the courts of the State of Colorado, and that any injunctive interference by this Court with the Commission's order is barred by 28 U.S.C. Section 1342 [the Johnson Act]."

21. Kan. S.A. 66–111 (1972) enumerates the grounds for complaint :
* * * that any of the rates or joint rates, fares, tolls, charges, rules, regulations, classifications or schedules of such public utility * * * are in any respect unreasonable, unfair, unjust, unjustly discriminatory or unduly preferential,

or both, or that any regulation, practice or act whatsoever affecting or relating to any service, performed or to be performed by such public utility * * * for the public, is in any respect unreasonable, unfair, unjust, unreasonably inefficient, insufficient, unjustly discriminatory or unduly preferential, or that any service performed or to be performed by such public utility * * * for the public is unreasonably inadequate, inefficient, unduly insufficient or cannot be obtained * * *.

22. Kan. S.A. 66–118c (1972) provides :
Within thirty (30) days after the application for a rehearing is denied, or if the application is granted, then within thirty (30) days after the rendition of the deci-

Provision is also made for the production of the transcript to the district court judge, who is required to give the case precedence over all other cases.[23] The cause is heard upon the record made before the commission, unless additional materials, properly receivable, are presented, in which event the district court proceedings are stayed pending the commission's consideration and ruling upon such materials, which is, again, reviewable in the district court. (Kan. S. A. 66–118f (1972)). During the pendency of the review hearings the district court may stay, in whole or in part, the commission's order.[24] Finally, provision is made for further judicial review in the Kansas Supreme Court. (Kan. S.A. 66–118d (1972)).

■■ From the foregoing it is clear that the plaintiffs have a plain, speedy, and efficient remedy in the state courts. In this regard we take note that plaintiffs hypothesize that even if they are successful in their claims as to the late charges, they might not later be successful in the state courts (either for procedural or substantive reasons) should they choose to pursue certain causes of action, e. g., "reparations" for usurious exactions. Plaintiffs misapprehend the thrust of the Act. Its requirements concern "any order affecting rates chargeable by a public utility." As to such order a prescribed state remedy is required. But the Act does not purport to require for its invocation a predictable successful outcome to whatever cause of action litigants may later see fit to assert in the state courts, should they have theretofore maintained a successful assault upon the rate structure.

The allegations in the complaint raise issues properly triable before the state courts. We conclude that the four conditions specified in the Act are met in

sion on rehearing, the applicant may apply to the district court of the county in which the order of the commission is to become effective for a review of such order or decision; if the order of the commission is to become effective in more than one county the application must be to the district court of one of such counties. The application for review shall be filed in the office of the clerk of the district court of the proper county and shall specifically state the grounds for review upon which the applicant relies and shall designate the order or decision sought to be reviewed. The clerk of the district court shall immediately serve a certified copy of said application upon the state corporation commission by transmitting a certified copy thereof by registered mail to the secretary of the state corporation commission at his office at the state capitol. The secretary shall immediately notify all parties who appeared in the proceedings before the commission by registered mail, that such application for review has been filed.

23. Kan. S.A. 66–118d (1972) provides in part:
The secretary [upon receipt of the application for review] shall forthwith transmit to the clerk of the district court in which the application for review has been filed, a certified transcript of all pleadings, applications, proceedings, orders or decisions of the commission and of the evidence heard by the commission on the hearings of the matter or cause * * *.
 * * * * *
All proceedings under this section shall have precedence in any court in which they may be pending, and the hearing of the cause shall be by the court without the intervention of a jury. The procedure upon the trial of such proceedings in the district court and upon appeal to the supreme court of this state shall be the same as in other civil actions, except as herein provided. No court of this state shall have power to set aside, modify or vacate any order or decision of the commission, except as herein provided.

24. Kan. S.A. 66–118g (1972) provides in part:
[D]uring the pendency of such proceeding the court, in its discretion, may stay or suspend, in whole or in part, the operation of the order or decision of the commission. No order so staying or suspending an order or decision of the commission shall be made by any court of this state otherwise than on five days' notice and after a hearing, and if a stay or suspension is allowed the order granting the same shall contain a specific finding, based upon evidence submitted to the court and identified by reference thereto, that great or irreparable damage would otherwise result to the petitioner and specifying the nature of the damage.

this case and that we are thus precluded by the terms of the Johnson Act from exercising jurisdiction interfering with the subject orders of the Commission.

It is well to point out, finally, that what is here being attempted is precisely what the Johnson Act in part sought to avoid, namely, the pitting of federal court against state court in the rate making process, to the exacerbation of federal-state relationships. Whether the simultaneous pursuit of the same questions in both state and federal jurisdictions is by the utilities or their customers is not critical. The evil to be avoided arises equally in both situations.

Here, as we have noted *supra* note 7, the same questions of whether the late charges were rates or interest, and whether usurious, were brought against these same defendants before the Kansas State Corporation Commission "In the Matter of the Complaint against Kansas Gas and Electric Company and the Gas Service Company, Defendant * * * ". While such matter was pending before the Commission, the instant suit was filed in the federal court. The Commission entered its ruling adverse to the complainants on April 16, 1974, with judicial review of the ruling available in the Kansas courts. Yet, argument is now made to us praying a ruling contrary to that of the Commission.

The situation is thus ripe for federal-state conflict. The Johnson Act forbids our participation. But we are constrained to observe that even if jurisdiction in a technical sense were present, we should, in conformity with the doctrine of comity between state and federal courts, decline to exercise it in this situation. It is as true today as it was at the time of *General Investment, supra* 236 F.2d at 468, that:

[W]here parties have come into federal court for a determination of rights, the federal court should not only stay its hand but should dismiss the action, where there is available in the state courts a complete and adequate remedy for the determination of the same

questions presented in the federal action. * * * We think the facts of this case bring it within the admonition of the Supreme Court in the Alabama case [Alabama Public Service Commission v. Southern Ry., 341 U.S. 341, 71 S.Ct. 762, 95 L.Ed. 1002 (1951)] that the federal court should not interfere when any federal question can be preserved in a state court action and therefore, as stated by the Supreme Court in that case, "Whatever rights appellee may have are to be pursued through the state courts." [Footnote omitted.]

Under the view we have taken of this case we need not examine the additional issues presented by the parties.

Affirmed.

### APPENDIX

Portions of the Kansas State Corporation Commission's findings in the matter referred to in note 7, *supra,* are set out below:

"7. * * * The Commission is persuaded and so finds that the late payment charges do not constitute payment for the extension of credit or forbearance by the defendants, but are, as defendants contend, a charge for utility service designed to allocate certain costs of such service to those who cause the incurrence of those costs. It follows, and the Commission so finds, that the late payment charges in question do not constitute interest nor are the charges usurious within the meaning of K.S.A. 16–201 et seq. as alleged.

"There is a definite distinction between utility service and business enterprises in which extension of credit and charges for the use of money is inherent. In the latter case, the extension of credit is for a profitable interest, or as an inducement to purchase competitive products or services. On the other hand, a public utility functions as nearly as possible on cash flow, and a large accumulation of accounts receivable is at best a hin-

drance to good, efficient utility economics, and rates and services are not structured to extend credit—nor should it be necessary to do so.

"8. Each of the defendants bills its customers *after* delivery of electrical service or natural gas service, as the case may be, and as such are to be distinguished from those utilities which bill in advance for service not yet rendered. \* \* \*

"9. Bearing in mind the costs of working capital required for operations pending delayed collection of delinquent accounts, unless there is a corresponding reduction in costs of collecting such accounts, elimination or reduction of late payment charges or extension of time of their imposition would have an adverse effect upon the return of defendants and ultimately would require higher rates to all of defendants' customers than might otherwise have been required to provide the defendants a fair return. The Commission is of the opinion and finds that utility costs attributable to those of the utilities' customers who do not pay their bills when due should not be so shifted to those who do promptly pay for the utility services they have received. The Commission further finds that the assessment of collection costs against the class of customers who cause them is consistent with the mandate of K.S.A. 66–107 et seq. requiring that utility rates shall not be unreasonably discriminatory nor unduly preferential. It likewise follows that the statute does not contemplate subsidization of one class of customer by another, nor within the classes.

"10. \* \* \*

"The evidence of defendant KG&E indicates that during the twelve month period upon which its study was based, collection expenses totaled $463,529 and receipts from late payment charges were $355,670. \* \* \* [T]here is nothing in the record before this Commission which impels the

Commission to the belief that the late charge made by each of the defendant utilities is, in its amount, unreasonable, unjustly discriminatory or unduly preferential when measured against the undisputed portion of their subsequently accruing costs of collecting delinquent accounts."