**STANISLAUS FOOD PRODUCTS COMPANY, Plaintiffs,**

**v.**

**The PUBLIC UTILITIES COMMISSION and Pacific Gas and Electric Company, Defendants.**

**No. C 81–2999 SW.**

United States District Court, N.D. California.

Aug. 11, 1982.

---

Graham & James, Boris H. Lakusta, Stephen E. Taylor, San Francisco, Cal., David H. Renton, Oakland, Cal., for plaintiff Stanislaus Food Products Co.

Janice F. Kerr, J. Calvin Simpson, Lawrence Q. Garcia, The Public Utilities Com'n of the State of Cal., San Francisco, Cal., for defendant Public Utilities Com'n.

Charles T. Van Deusen, John N. Frye, Shirley A. Sanderson, Donald Erickson, San Francisco, Cal., for defendant Pacific Gas and Elec. Co.

## ORDER AND OPINION GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

SPENCER WILLIAMS, District Judge.

### INTRODUCTION

This matter came before the court on May 27, 1982. After careful consideration of the briefs and arguments of counsel, the affidavits and all other matters in the record, the court denies Plaintiff's Motion for Summary Judgment and grants Defendants' Motions for Summary Judgment. The following is a statement of the court's reasoning and its written order.

### FACTUAL BACKGROUND

In early 1974, Stanislaus Food Products Company (Stanislaus) requested Pacific Gas and Electric Company (PG & E) to provide additional natural gas on an interruptible

basis.[1] PG & E stated that it would have to construct additional facilities, including gas lines and valves in order to provide Stanislaus with this service. As a condition of providing such service, PG & E required Stanislaus to agree by contract to pay for this construction and the cost of owning and maintaining the facilities for sixty months.

Stanislaus orally objected to PG & E's demand that it pay these costs. PG & E persisted in its demand and Stanislaus, in need of the gas to operate its plant and with no other source of gas, signed a contract prepared by PG & E on PG & E's terms.

The contract was executed on June 24, 1974 and provided that PG & E would supply Stanislaus with the requested gas service. Stanislaus was to pay PG & E a non-refundable advance of $41,181, the estimated cost of constructing the facilities, and a monthly charge of $411.81 for a period of sixty months, the estimated cost of owning and maintaining these facilities. Stanislaus paid the advance and thirty-one monthly installments.

PG & E relied on tariff provision Rule E.7 in its demand for the payments for constructing and maintaining the facilities. That rule allows special contracts, approved by the Public Utilities Commission (PUC), to require customers to pay for facilities when there are "unusual circumstances". PG & E determined the shortage of gas could satisfy this unusual circumstance requirement.

PG & E then filed a letter requesting approval of the terms of this contract with the PUC on August 9, 1974. Stanislaus was not served with a copy of this letter nor was it informed that PG & E had applied to the PUC for approval. Stanislaus did know, as it was written into the contract, that PG & E needed the PUC's approval for any deviation from its tariff. On August 20, 1974 the PUC approved PG & E's contract with Stanislaus.

On May 3, 1977, the PUC issued *Carnation Company v. Pacific Gas and Electric Company,* Decision No. 87277, which stated that the existing shortage of gas was not an "unusual circumstance" which justified a departure from the standard tariff charge. The PUC ordered PG & E to pay Carnation the charges imposed by the contract which were in excess of the standard tariff rate.

After becoming aware of this decision, Stanislaus filed a complaint with the PUC to recover the amounts paid to PG & E under the contract plus interest. Stanislaus' complaint was submitted to the PUC on a stipulation of facts and legal issues signed by both parties. The facts were identical to those of Carnation with two exceptions: (1) Stanislaus, unlike Carnation, did not protest in writing the charges for construction and ownership levied by PG & E, and (2) the PUC in its resolution approving the terms of the contract between Stanislaus and PG & E did not reserve to Stanislaus the right to bring a complaint for reparation as it had to Carnation. The issue presented by both parties to the PUC was whether those two circumstances would destroy Stanislaus' right to reparation.

Twenty-one months later, on September 12, 1979, the PUC issued a decision denying Stanislaus reparation. The *Carnation* decision was overruled as the PUC found the shortage of gas to be an "unusual circumstance".

On October 11, 1979, Stanislaus filed a petition for rehearing with the PUC. The rehearing, set for June 3, 1980 was limited to the receipt of evidence and briefs on the issue of the existence of unusual circumstances as defined in the prior Stanislaus decision.

Stanislaus did not wait for the limited rehearing but applied to the California Supreme Court for a writ of review pursuant to Section 1756 of the California Public Utilities Code. The California Supreme Court denied its application by minute order on March 19, 1980 and gave no reasons for the denial.

---

1. Gas on an interruptible basis is defined as gas service which may be interrupted during peak periods when there is insufficient gas available to meet demand.

On May 1, 1980, Stanislaus petitioned the PUC to amend its claim for reparation to allege (a) that the PUC had denied Stanislaus due process when it approved PG & E's application for authority to deviate from its tariff without notice and hearing and (b) that numerous other PG & E customers had been treated similarly. Stanislaus stated in its petition that these facts had not been alleged in the complaint because they were irrelevant in light of the stipulation. This petition for amendment was denied on June 16, 1981.

The limited rehearing was held on June 3, 1980. The PUC ruled in favor of PG & E and again denied Stanislaus reparation. Stanislaus did not petition for a review of this decision with the California Supreme Court, but filed the present action in this court under 42 U.S.C. § 1983. It alleged that the PUC's approval of the contract, without a hearing, resulted in PG & E deviating from its tariff and Stanislaus being deprived of monies without due process. Stanislaus claimed there was no adequate remedy in a California state court.

## I. DOES THIS COURT HAVE JURISDICTION UNDER 42 U.S.C. § 1983?

The Civil Rights Act of 1871 (42 U.S.C. § 1983) provides:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any state . . . subjects, or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ."

Defendants argue that the PUC is not a "person" within the meaning of this statute but is an administrative agency of the State of California[2] and is, therefore, immune to suit.

■■■■ Historically, judges have been absolutely immune from liability for acts done in the performance of their official functions. *Pierson v. Ray,* 386 U.S. 547, 553–55, 87 S.Ct. 1213, 1217, 18 L.Ed.2d 288 (1966). There is strong public interest in allowing judges the liberty to exercise their functions without the threat of intimidation by future lawsuits. *Id.* at 554, 87 S.Ct. at 1217.

In *Butz v. Economou,* 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978), the United States Supreme Court extended judicial immunity to a federal administrative agency because it "share[d] enough of the characteristics of the judicial process that those who participate in such adjudication should also be immune from suits for damages". *Id.* at 513, 98 S.Ct. at 2914. Some of the powers of that agency which the Court found "functionally comparable" to those of a judge were: (1) issuing subpoenas, (2) ruling on evidence, (3) regulating the course of the hearings, and (4) making or recom-

2. The PUC was established by article 12, Section 1, of the California Constitution:

SECTION 1. The Public Utilities Commission consists of 5 members appointed by the Governor and approved by the Senate, a majority of the membership concurring, for staggered 6-year terms. A vacancy is filled for the remainder of the term. The Legislature may remove a member for incompetence, neglect of duty, or corruption, two thirds of the membership of each house concurring.

Sections 2 and 6 of Article 12 empower the Commission to act in the following manner:
SECTION 2. Subject to statute and due process, the commission may establish its own procedures. Any commissioner as designated by the commission may hold a hearing or investigation or issue an order subject to commission approval.

SECTION 6. The Commission may fix rates, establish rules, examine records, issue subpoenas, administer oaths, take testimony, punish for contempt, and prescribe a uniform system of accounts for all public utilities subject to its jurisdiction.

The Commission is subjected to legislative control as follows:
SECTION 5. The legislature has plenary power, unlimited by the other provisions of this constitution but consistent with this article, to confer additional authority and jurisdiction upon the commission, to establish the manner and scope of review of commission action in a court of record, and to enable it to fix just compensation for utility property taken by eminent domain.

118

mending decisions. *Id.* at 513, 98 S.Ct. at 2914. *See also, Sellars v. Procunier,* 641 F.2d 1295 (9th Cir.1981) (granting immunity to parole board officials); *Clark v. Washington,* 366 F.2d 678 (9th Cir.1966) (granting immunity to a State Bar Association).

■ The Ninth Circuit has extended judicial immunity further to include state agencies when they act in a judicial capacity. *Silver v. Dickson,* 403 F.2d 642 (9th Cir. 1968), *cert. denied,* 394 U.S. 990, 89 S.Ct. 1477, 22 L.Ed.2d 765 (1969). Finally state agencies, which are but the arms of the state government, are not persons for purposes of 42 U.S.C. § 1983 and are immune from suit. *Alison v. California Adult Authority,* 419 F.2d 822 (9th Cir.1969). *See also, Bennett v. People,* 406 F.2d 36 (9th Cir.), *cert. denied,* 394 U.S. 966, 89 S.Ct. 1320, 22 L.Ed.2d 568 (1969).

■ Accordingly, this court finds the PUC to be a state agency which is functionally comparable to a judge. It is, therefore, protected from suit under 42 U.S.C. § 1983.

■ Stanislaus has also claimed original jurisdiction in this court under 28 U.S.C. § 1343 which provides:

The district courts have original jurisdiction of any civil action authorized by law to be commenced by any person:
(3) To redress the deprivation, under color of any state law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States . . . .

Jurisdiction is not granted by this statute alone but when the action is otherwise authorized by law. *Henderson v. Defense Contract Administration Services Region, N.Y.,* 370 F.Supp. 180 (S.D.N.Y.1973). Jurisdiction has not been established under 42 U.S.C. § 1983 and cannot, therefore, be based on 28 U.S.C. § 1343.

## II. IS THIS ACTION BARRED BY THE JOHNSON ACT, 28 U.S.C. § 1342?

■ The Johnson Act, 28 U.S.C. § 1342, provides:

The district courts shall not enjoin, suspend or restrain the operation of, or compliance with, any order affecting rates chargeable by a public utility and made by a State Administrative agency or a ratemaking body of a State political subdivision, where:
(1) Jurisdiction is based solely on diversity of citizenship or repugnance of the order to the Federal Constitution; and
(2) The order does not interfere with interstate commerce; and
(3) The order has been made after reasonable notice and hearing; and
(4) A plain, speedy and efficient remedy may be had in the courts of such State.

" . . . [B]y its broad wording it is clear that it [the Johnson Act] was intended to keep constitutional challenges to orders affecting rates out of the federal courts 'lock, stock and barrel'." *Tennyson v. Gas Service Co.,* 506 F.2d 1135, 1138 (10th Cir.1974). As Professor Moore explained, the Act prompts a "general hands-off policy relative to state rate making". 1A, Pt. 2, J. Moore, *Moore's Federal Practice* ¶ 0.206 (2d ed. 1980). The PUC order directly affected the rates that Stanislaus was to pay for gas service. Therefore, this court's review of that rate is inappropriate.

Stanislaus claims that the Johnson Act does not apply because all four requirements of the act have not been met. Stanislaus concedes that the first two requirements are satisfied. However, it alleges the PUC order was not made after reasonable notice and hearing and that no plain, speedy and efficient remedy may be had in the California state courts.

## A. WAS STANISLAUS GIVEN REASONABLE NOTICE AND HEARING?

"The Johnson Act does not engraft its own undefined standards of notice and hearing upon the rate making bodies of the several states but requires *no more than* that which is appropriate to an 'order affecting rates'." *Tennyson, supra* at 1141. Stanislaus, by its own choice, signed a contract with PG & E and agreed to pay a certain amount of money. Stanislaus knew it was necessary for PG & E to submit that

contract to the PUC for approval. Three years later, Stanislaus filed the complaint for reparation with the PUC. During the following two and one-half years, Stanislaus was given a hearing and a rehearing on its claim and was denied reparation. These hearings were the PUC's usual procedure for handling claims against an order affecting rates. Thus, the facts indicate Stanislaus had reasonable notice and hearing.

**B. DID STANISLAUS HAVE A PLAIN, SPEEDY AND EFFICIENT REMEDY IN STATE COURT?**

California Public Utilities Code § 1756 provides the right to apply to the California Supreme Court for a writ of certiorari or review to inquire into the lawfulness of any PUC order, whether on initial hearing or rehearing. Stanislaus petitioned for review after the first PUC hearing and the petition was denied without opinion. After the PUC reheard the matter and again denied Stanislaus reparation, Stanislaus failed to petition for review. Instead, it chose to file in this court, alleging no state judicial remedy was available to them. There was no state judicial remedy available any longer because Stanislaus did not file in the California Supreme Court before the deadline passed. This court finds, therefore, that Stanislaus did not exhaust the available state judicial remedies.

Stanislaus argues that even if there was a state judicial remedy available it would not be adequate because (1) it is frequently impossible to determine whether the California Supreme Court has reviewed the merits of a petition; and (2) it leads to a loss of federal rights. In *Consumers Lobby Against Monopolies v. Public Utilities Com.,* 25 Cal.3d 891, 160 Cal.Rptr. 124, 603 P.2d 41 (1979), the California Supreme Court held that a ruling on a petition for review is a decision on the merits and would raise the bar of *res judicata. See also, Pacific Telephone and Telegraph Co. v. The Public Utilities Com.,* 600 F.2d 1309 (9th Cir.1979). Stanislaus could then petition from the final judgment of the California Supreme Court for a review of its federal questions in the United States Supreme Court with

no loss of its federal rights. 28 U.S.C. § 1257.

Stanislaus appears to be seeking an appeal of a state order in this court. 42 U.S.C. § 1983 was not designed as a substitute for the right of appeal. *Coogan v. Cincinnati Bar Association,* 431 F.2d 1209 (6th Cir.1970). This court should not be used as a forum for appellate jurisdiction over state proceedings. *Reich v. City of Freeport,* 388 F.Supp. 953 (N.D.Ill.1974).

CONCLUSION

Stanislaus had a hearing and a rehearing with the PUC, and also had a plain, speedy and efficient remedy in state court. It elected not to take full advantage of that remedy by failing to petition for review in the California Supreme Court after the rehearing and failing to then petition to the United States Supreme Court. This court holds that federal judicial review is, therefore, inappropriate.

Accordingly, IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment is denied.

IT IS FURTHER ORDERED that the Defendants' Motions for Summary Judgment are GRANTED.

IT IS SO ORDERED.