**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 8 1999**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

U.S. WEST INC., a Delaware corporation;
U.S. WEST COMMUNICATIONS, INC., a
Colorado corporation; U.S. WEST
MARKETING RESOURCES GROUP, INC.,
a Colorado corporation,

  Plaintiffs-Appellants,

   v.

GLORIA TRISTANI, in her official capacity
as Chairman of the New Mexico State
Corporation Commission; ERIC P. SERNA,
in his official capacity as Commissioner of
the New Mexico State Corporation
Commission; JEROME BLOCK, in his
official capacity as Commissioner of the New
Mexico State Corporation Commission,

  Defendants-Appellees,

_____

AT&T COMMUNICATIONS OF THE
MOUNTAIN STATES, INC.,

  Intervenor,

and

MCI TELECOMMUNICATIONS
CORPORATION,

  Amicus Curiae.

No. 98-2053

Laurence H. Tribe, Cambridge, Massachusetts, (Jonathan S. Massey, Cambridge, Massachusetts; Victor R. Ortega and Bruce Herr of Montgomery & Andrews, P.A., Santa Fe, New Mexico; Robert L. Connelly, Jr., Raymond C. Fitzsimons, Norton Cutler, and Blair A. Rosenthal of U.S. West, Inc., Denver, Colorado, with him on the briefs), for the appellants.

James C. Martin, General Counsel, New Mexico Public Regulation Commission (Tom Udall, New Mexico Attorney General; David M. Kaufman, Assistant Attorney General; Deborah Dorman-Rodriguez, Special Assistant Attorney General; Michael Dickman, Special Assistant Attorney General, on the brief), Santa Fe, New Mexico, for the appellees.

Before **ANDERSON**, **BARRETT**, and **HENRY** Circuit Judges.

**BARRETT**, Senior Circuit Judge.

U S West, Inc., U S West Communications, Inc., and U S West Marketing Resources Group, Inc., now U S West Dex, Inc., (collectively "U S West"), appeal from the district court's Fed. R. Civ. P. 12(b)(1) dismissal of the case pursuant to the Johnson Act, 28 U.S.C. § 1342, in favor of Defendants' Gloria Tristani, Eric P. Serna, and Jerome Block, in their official capacities as Commissioners of the New Mexico State Corporation Commission (collectively "the Commissioners").

Background

U S West Communications, Inc., and U S West Dex, Inc., are independent wholly owned subsidiaries of U S West, Inc. U S West Communications provides regulated telecommunications services in New Mexico and U S West Dex publishes White and Yellow Pages directories for New Mexico. The Commissioners regulate the operation of U S West Communications in New Mexico,

including basic and intrastate long distance telephone services and pay telephones.

On August 28, 1992, U S West Communications filed an application with the Commissioners, asking for a $29,600,000 rate increase for its local telephone and intrastate long distance services within New Mexico. Pursuant to Article XI, § 7 of the New Mexico Constitution, the Commissioners imputed $12,647,000 of U S West Dex's gross revenue ($7,712,000 in net revenue) from its Yellow Pages publications to U S West Communications in calculating rates for the April 8, 1993, rate order (the rate order). (Appellants' App. at 356 ¶22.) The Commissioners adopted the imputation methodology proposed by U S West Communications and rejected the methods and amounts proposed by its staff and the New Mexico Attorney General. *Id*. at 356-57 ¶25.

The New Mexico Attorney General appealed the rate order, claiming the Commissioners failed to correctly calculate the imputation of directory advertising revenues from U S West Dex to U S West Communications. The New Mexico Supreme Court rejected the Attorney General's arguments and decided that the Commissioners properly exercised their discretion in selecting the method for calculating the directory advertising imputation amount. *U S West Communications Inc. v. New Mexico State Corp. Comm'n*, 909 P.2d 716, 721-22 (N.M. 1995).

On October 3, 1996, U S West initiated this action in federal district court, alleging that imputation of U S West Dex's directory advertising Yellow Pages revenue to U S West Communications violated its First Amendment right to freedom of expression, and worked an unconstitutional taking of its property for public use without just compensation. (Appellants' App. at 3 ¶6; 8-13.) U S West sought a declaration that any imputation was unconstitutional under the First, Fifth, and Fourteenth Amendments to the United States Constitution and that New Mexico law

was unconstitutional and void insofar as it authorizes such imputations. Further, U S West sought an injunction to bar the imputation of directory revenues in future rate orders. *Id.* at 13 ¶1-3. On January 13, 1997, the Commissioners filed a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) and the Johnson Act, 28 U.S.C. § 1342. *Id.* at 15.

On January 28, 1998, the district court granted the Commissioners' motion to dismiss. *Id.* at 361-78. The district court concluded that the Johnson Act barred jurisdiction. *Id.* at 377. The district court did not consider U S West's February 18, 1997, motion for summary judgment. *Id.* at 362.

On appeal, U S West contends that the Johnson Act does not bar subject matter jurisdiction in this case and imputing U S West Dex's Yellow Pages revenue to U S West Communication is unconstitutional.[1] U S West argues that: (1) the district court erred in finding that the Johnson Act should be broadly construed to prohibit federal court jurisdiction when the court's actions indirectly affect a rate order, and (2) the court erred in finding that the four enumerated conditions of the Johnson Act were satisfied. We review the district court's dismissal for lack of subject matter jurisdiction *de novo*. *Bryan v. Office of Personnel Management*, 165 F.3d 1315, 1318 (10th Cir. 1999).

## Discussion

U S West contends that the district court erred in dismissing its complaint for lack of subject matter jurisdiction pursuant to the Johnson Act, 28 U.S.C. § 1342. U S West asserts that: the Johnson Act does not bar federal jurisdiction to consider a constitutional challenge to a state statute

---

[1] Based on our conclusion that the Johnson Act bars federal court jurisdiction over U S West's claims, we do not reach the merits of U S West's claims regarding whether imputation is unconstitutional.

or a state constitutional provision; the Johnson Act is inapplicable because U S West does not seek to enjoin any "order affecting rates;" the Johnson Act does not bar federal jurisdiction because the interstate commerce exception applies; and, the Johnson Act does not bar federal jurisdiction because imputation interferes with the Congressional scheme of telecommunications regulation.[2]

The Johnson Act sought to remedy the evils of federal court interference with state control of its intrastate public utility rates. *Tennyson v. Gas Serv. Co.*, 506 F.2d 1135, 1137 (10th Cir. 1974). In *Tennyson*, we observed that "by its broad wording it is clear that [the Johnson Act] was intended to keep constitutional challenges to orders affecting rates out of the federal courts 'lock, stock and barrel,' or, as Professor Moore succinctly puts it, to effect a 'general hands-off policy relative to state rate making.'" *Tennyson*, 506 F.2d at 1138 (quoting 1A J. Moore, Federal Practice ¶ 0.206, at 2282 (1974)). *See also Miller v. NYS Pub. Serv. Comm'n*, 807 F.2d 28, 33 (2nd Cir. 1986) ("Congressman Lewis of Colorado expressed the sense of those supporting the Johnson bill when he commented: 'The Johnson bill absolutely abolishes the jurisdiction of the United States courts in rate cases, and in rate cases only.'") (citing 78 Cong. Rec. at 8328 (1934)); *Hanna Mining Co. v. Minnesota Power and Light Co.*, 739 F.2d 1368, 1370 (8th Cir. 1984) ("The [Johnson] Act is to be broadly applied to keep challenges to orders affecting rates out of the federal courts.").

---

[2]     The district court declined to consider U S West's contention that the Johnson Act does not bar federal jurisdiction because imputation interferes with the congressional scheme of telecommunications regulation established in the Telecommunications Act of 1996. The district court found that the issue was not raised in U S West's complaint. (Appellants' App. at 376 n.7.) Although U S West mentioned the Telecommunications Act of 1996 in its complaint to preemptively refute any argument that imputation can be justified as a universal service subsidy, Appellants' App. at 10 ¶ 41, it did not complain that imputation interferes with the congressional scheme of telecommunications regulation established in the Telecommunications Act of 1996. Therefore, we will not consider this issue on appeal. *See Lawmaster v. Ward*, 125 F.3d 1341, 1346 n.2 (10th Cir. 1997) (refusing to consider a claim not raised in the complaint).

The Johnson Act provides,

The district courts shall not enjoin, suspend or restrain the operation of, or compliance with, any order affecting rates chargeable by a public utility and made by a State administrative agency or a rate-making body of a State political subdivision, where:

(1)     Jurisdiction is based solely on diversity of citizenship or repugnance of the order to the Federal Constitution; and,
(2)     The order does not interfere with interstate commerce; and,
(3)     The order has been made after reasonable notice and hearing; and,
(4)     A plain, speedy and efficient remedy may be had in the courts of such State.

28 U.S.C. § 1342.

The Johnson Act does not deprive a federal court of jurisdiction unless the challenge is to an "order affecting rates" and each of the four enumerated conditions is present. *US West Inc. v. Nelson*, 146 F.3d 718, 722 (9th Cir. 1998); *Hawaiin Tele. v. Public Util. Comm'n of Haw.*, 827 F.2d 1264, 1273 (9th Cir. 1987), *cert. denied*, 487 U.S. 1218 (1988). The burden of showing that the conditions are present is on the party invoking the act. *Nelson*, 146 F.3d at 722. Additionally, the Johnson Act precludes federal court jurisdiction in actions seeking both declaratory and injunctive relief, *see Tennyson*, 506 F.2d at 1139 (declaratory relief not available); *General Inv. & Serv. Corp. v. Wichita Water Co.*, 236 F.2d 464, 466 (10th Cir. 1956) (declaratory and injunctive relief not available pursuant to Johnson Act), and a plaintiff cannot plead violations of 42 U.S.C. § 1983 to avoid the Johnson Act, *see Peoples Nat'l Util. Co. v. City of Houston*, 837 F.2d 1366, 1368 (5th Cir. 1988) (one cannot "use § 1983 as an 'end run' around the Johnson Act"); *Tennyson*, 506 F.2d at 1135 (plaintiffs' § 1983 action dismissed pursuant to Johnson Act).

## I. Any Order Affecting Rates

U S West contends that: (1) the Johnson Act does not bar federal jurisdiction to consider a

constitutional challenge to a state statute or a state constitutional provision, and (2) the Johnson Act is inapplicable because it does not seek to enjoin "any order affecting rates." However, the manner in which U S West characterizes its claim is not dispositive of whether the Johnson Act applies to bar federal jurisdiction. *See Nelson*, 146 F.3d at 722 ("[T]he way that the U S West companies have chosen to describe their grievance does not control whether the Johnson Act bars this action."). The threshold question is whether the complaint challenges "any order affecting rates chargeable by a public utility and made by a State administrative agency or a rate-making body of a State political subdivision." 28 U.S.C. § 1342.

U S West contends that the Johnson Act by its terms does not bar federal jurisdiction to hear constitutional challenges to a state statute/law made by the legislature or a state constitutional provision. U S West asserts that if Congress had intended the Johnson Act to encompass state statutes and state constitutional provisions, it would have used "very different statutory language." (Brief of Appellants at 15.)

As a preliminary matter, we note that any challenge on appeal to the constitutionality of Article XI, § 7 of the New Mexico Constitution, is moot because Article XI, § 7 was repealed, effective January 1, 1999. *See Ashcroft v. Mattis*, 431 U.S. 171, 172-73 (1977) (claim for declaratory relief moot when no "present right" is involved); *Adarand Constructors, Inc. v. Slater*, 169 F.3d 1292, 1296 (10th Cir. 1999) ("To qualify for adjudication in the federal courts, an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.") (internal quotation and citations omitted). Article XI, § 7 was replaced by § 52 of the New Mexico Public Regulation Commission Act (NMPRCA), § 63-7-1.1 NMSA, effective January 1, 1999.

The Commissioners contend that U S West cannot challenge § 52 of the NMPRCA on appeal

because it was not raised before the district court and it is not ripe for review. (Brief of Appellees at 18-19 n.12.) U S West responds that its challenge is ripe because the application of the statute to it is inevitable and deciding the issue here would serve a useful purpose and be of great practical assistance to all concerned. U S West points out that the district court could not have considered the statute as it was not enacted until after the district court rendered its decision. (Appellants' Reply Brief at 5 n.2.)

"The case or controversy requirement of Article III admonishes federal courts to avoid 'premature adjudication' and to abstain from 'entangling themselves in abstract disagreements.'" *Keyes v. School Dist. No. 1, Denver, Colo.*, 119 F.3d 1437, 1443 (10th Cir. 1997) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967)). "[T]he doctrine of ripeness is intended to forestall judicial determinations of disputes until the controversy is presented in clean-cut and concrete form. *New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1499 (10th Cir.1995) (citations and quotations omitted)). Whether a claim is ripe for judicial review is a question of law which we review *de novo*. *Keyes*, 119 F.3d at 1444. The two-part ripeness inquiry requires us to evaluate (1) the fitness of the issue for judicial resolution and (2) the hardship to the parties of withholding judicial consideration. *New Mexicans for Bill Richardson*, 64 F.3d at 1499 (internal quotations omitted). The customary ripeness inquiry is relaxed, however, in circumstances where there is a facial challenge implicating the First Amendment. *Id*. In such instances, we also consider the chilling effect the challenged law may have on First Amendment liberties. *Id*. at 1500. In making these inquiries, we "caution against a rigid or mechanical application of a flexible and often context-specific doctrine." *Sierra Club v. Yeutter*, 911 F.2d 1405, 1417 (10th Cir. 1990).

Whether a challenge is fit for judicial resolution requires the court to consider both the legal

nature of the question presented and the finality of the legislative action. *Harvey E. Yates Co. v. Powell*, 98 F.3d 1222, 1237-38 (10th Cir. 1996) (quotation omitted). We conclude that both of these factors weigh in favor of concluding that U S West's challenge to § 52 of the NMPRCA is ripe for review. The relevant language of Article XI, § 7 and § 52 of the NMPRCA is identical. Article XI, § 7 provided and § 52 of the NMPRCA provides, that in

> fixing rates of telephone and telegraph companies, due consideration shall be given to the earnings, investments and expenditures as a whole within the state. The commission shall include in that consideration the earnings, investments and expenditures derived from or related to the sale of directory advertising and other directory listing services.

New Mexico Const. article, XI, § 7 (repealed Jan. 1, 1999); § 63-7-1.1(B) NMSA. The dispute over the constitutionality of this language does not depend on whether its is found in the New Mexico Constitution or in the New Mexico statutes. It is a purely legal question, and there is no question that the legislative action is final.

In considering the hardship the parties may suffer in withholding review, we conclude that U S West and the Commissioners would both suffer hardship if we dismiss U S West's challenge to § 52 of the NMPRCA. "In evaluating potential hardship to the parties, a court should consider (1) whether the challenged rule has had a direct impact on the party challenging the rule, and (2) the possible harm to the parties of delaying judicial consideration." *Harvey E. Yates Co.*, 98 F.3d at 1238 (quotation omitted). Section § 52 of the NMPRCA has a direct impact on U S West as the relevant language authorizes imputation of directory advertising revenue in fixing rates. *See Mountain States Tele. and Tele. Co. v. Corporation Comm'n*, 653 P.2d 501, 505-06 (N.M. 1982) (interpreting the same language of Article XI, § 7 to allow imputation of directory advertising revenue). Both U S West and the Commissioners have expended a great deal of time and money

in presenting the imputation issue in federal court. It would be a waste of time, money, and judicial resources should we delay review. Further, any chilling effect the statute may have on U S West's First Amendment rights counsels in favor of ripeness. The "harm" alleged by U S West is not contingent upon uncertain or speculative future action. *See Sierra Club*, 911 F.2d at 1419 (judicial intervention is inappropriate based on the contingent and speculative nature of the harm).

Even though the statute was not presented to the district court for review, the relevant language was before the district court in Article XI, § 7. Under these circumstances, this is not a new issue on appeal, but simply a new title to the same issue, i.e., whether the relevant language violates U S West's constitutional rights. As such, we shall not invoke our general rule that issues not raised in the district court will not be considered on appeal. *See e.g. Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215, 1222 (10th Cir. 1996) ("[W]e may consider changes in governing law arising during the pendency of the appeal."). Therefore, we hold that U S West's challenge to § 52 of the NMPRCA is ripe for our review.

On the merits, U S West's first argument is that its challenge is solely to a state statute, and that the Johnson Act by its terms does not bar federal jurisdiction to hear constitutional challenges to a state statute. In support of this argument, U S West relies on *Public Utilities Commission of California v. United States*, 355 U.S. 534 (1958). Even assuming, arguendo, that U S West's interpretation of *Public Utilities* is correct, we think that case is distinguishable from the case at hand. The plaintiffs in *Public Utilities* really were challenging a state statute—in that case, a state statute which required the United States to submit its negotiated rates with carriers to the California Public Utilities Commission for approval. In this case, by contrast, despite U S West's careful attempts to characterize its case as a challenge to a state statute, the challenge here is not to the

statute but to the Commissioners' underlying administrative imputation power itself.

U S West's own complaint bears this out. In its prayer for relief, U S West seeks a declaration "that <u>any imputation</u> of Yellow Pages revenue to regulated telephone serv[ice] is unconstitutional and void" under the First, Fifth, and Fourteenth Amendments, and a permanent injunction prohibiting the Commissioners "from imputing Yellow Pages revenue to [U S West's] regulated telephone service, <u>in any manner</u>." (Appellants' App. at 13) (emphasis added). Clearly, U S West wanted the district court not only to declare the statute unconstitutional, but it also wanted the court to declare that the Commissioners' imputation power is also unconstitutional. This is not simply a challenge to a state statute, and therefore U S West's reliance on *Public Utilities* is misplaced.

U S West next claims that, even if its challenge is not directly to a state statute, its challenge to the administrative imputation power is not to "any order affecting rates," and therefore the Johnson Act does not apply. U S West presented this precise question to the Ninth Circuit in *Nelson*, and the court there rejected U S West's argument. *Nelson*, 146 F.3d at 722-23. We likewise reject U S West's argument. Although U S West's challenge is not phrased as a direct challenge to a rate order itself, the challenge is to an integral part of the rate structure thoroughly presented to and ruled upon by the Commissioners. *See id.* at 722 (stating that "even if imputation accurately is conceived as a Commission practice, a federal district court may not entertain an attack on that practice if it is part of the rate-making structure"). *See also Tennyson*, 506 F.2d at 1140 (stating that "[s]ince the late charges made were presented to the Commission as an integral part of the rate structures and so ruled upon by the Commission, it is clear that its rulings were orders 'affecting' rates within the terms of the [Johnson] Act"). The Commissioners considered three different methods of imputation

- 11 -

presented by the Attorney General, the Commissioners' staff, and U S West, before deciding upon the method advocated by U S West. *See* Appellants' App. at 356-57 ¶ 21-25. As such, U S West's challenge does not simply affect rate orders incidentally. "Because imputation is a Commission procedure that cannot be separated from its substantive expression in rate orders, the US West companies' challenge to imputation—however phrased—is a challenge to 'any order affecting rates' as a matter of law." *Nelson*, 146 F.3d at 723.

Finally, U S West argues that its challenge is not to "any order affecting rates chargeable by a public utility and <u>made</u> by a State . . . rate-making body," because it seeks only prospective injunctive and declaratory relief, and therefore, no rate orders already "made" will be affected by our ruling. We disagree with U S West's interpretation of the Johnson Act. "[F]uture rate orders are a subset of the larger set comprising 'any order affecting rates.'" *Nelson*, 146 F.3d at 723. Furthermore, U S West's interpretation presents an additional problem. Because rate orders continue in effect until a new order is issued, if we were to enjoin only future imputation as unconstitutional, then the Commissioners could continue an unconstitutional practice until such time, if ever, they deemed it necessary to issue a new rate order. We therefore think that U S West's challenge is necessarily to "an[] order affecting rates."

Therefore, we hold that U S West's challenge to the Commissioners' imputation power is a challenge to "an[] order affecting rates." Accordingly, we must proceed to determine whether the four enumerated conditions of the Johnson Act have been met here.

## II. Four Johnson Act Conditions

U S West does not contest that jurisdiction is based solely on repugnance of the order to the United States Constitution, the order was made after reasonable notice and hearing, or a plain,

speedy, and efficient remedy may be had in the state courts. *See* 28 U.S.C. § 1342(1), (3), and (4). U S West contends that the interstate commerce exception applies because Yellow Pages revenue imputation interferes with interstate commerce, inasmuch as Yellow Pages advertising and publishing take place in interstate commerce.

In order for U S West's challenge to be exempt from the Johnson Act, the order must *interfere* with interstate commerce. *See* 28 U.S.C. § 1342(2) (emphasis added). Interference requires more than an incidental effect on interstate commerce. *See Nelson*, 146 F.3d at 724 ("'Certainly all state rate-making action does have some *influence upon or effect* upon interstate commerce but these actions do not necessarily *interfere* with interstate commerce . . ..'") (quoting *Louisiana Power & Light Co. v. Ackel*, 616 F.Supp. 445, 448 (M.D. La. 1985)). Thus, the fact that Yellow Pages publishing and advertising takes place in interstate commerce does not itself lead to the conclusion that the rate order interferes with interstate commerce.

In calculating the rate order the Commissioners imputed revenue from U S West Dex to U S West Communications. However, the Commissioners did not actually transfer any funds. *See* Appellants' App. at 355 ¶16. Thus, U S West's argument that "U S West Dex faces a highly discriminatory special penalty from which its competitors are exempt" is disingenuous. (Appellants' Reply Brief at 10.) The burden, if any, is on U S West, Inc., the parent corporation, as a result of the lowered revenue of U S West Communications, its wholly owned subsidiary. Furthermore, the rate order does not affect the rates chargeable by U S West Dex for its advertising services. Any indirect or incidental effect that exists does not amount to interference with interstate commerce. Imputation is simply an accounting method used to assist the Commissioners in setting the intrastate rates of U S West Communications. (Appellants' App. at 355 ¶15-16.) *Cf. Tri-State Generation &*

*Transmission Ass'n v. Public Serv. Comm'n of Wyo.*, 412 F.2d 115, 118 (10th Cir. 1969) (unregulated multi-state provider of electrical energy engaged in interstate commerce and order of Wyoming Commission potentially interfered by preventing Wyoming utilities from paying their contract obligations), *cert. denied*, 397 U.S. 1043 (1970). The fact that imputation adversely affects, burdens, or even interferes with U S West Communication's revenue requirements and intrastate rates is purely an intrastate issue not cognizable under the Johnson Act's interstate exception. *Nelson*, 146 F.3d at 724.

## Conclusion

We hold that the Johnson Act precluded the district court from considering U S West's constitutional claims against the Commissioners because U S West's challenges would require a federal court to "enjoin, suspend or restrain the operation of, or compliance with, any order affecting rates chargeable by a public utility and made by a State administrative agency or a rate-making body of a State political subdivision." 28 U.S.C. § 1342. Thus, the district court properly dismissed this case with prejudice.

U S West is free to pursue its claims in state court, as the Johnson Act intended. *See Peoples Nat'l Util. Co.*, 837 F.2d at 1368-69 ("If Peoples was not satisfied with Houston's action, state review was available, including an appeal to the state utility commission and in turn to the state courts."). Contrary to U S West's adamant assertions, "intervention of a federal court is not necessary for the protection of federal rights." *Alabama Pub. Serv. Comm'n v. Southern Ry. Co.*, 341 U.S. 341, 349 (1951).

We deny the Commissioners' Motion to Supplement the Record on Appeal filed May 28, 1998.

- 14 -

**AFFIRMED**.