ANADARKO PETROLEUM CORPORATION, et al., Petitioners,

v.

FEDERAL ENERGY REGULATORY COMMISSION, Respondent.

Amoco Production Company, et al., Intervenors.

Nos. 98–1227—98–1232, 98–1297 & 98–1298.

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 7, 1999.

Decided Oct. 29, 1999.

Order Granting Rehearing, see 2000 WL 19659.

Carla J. Stovall argued the cause for petitioners State of Kansas and Kansas Corporation Commission. On the briefs were John McNish and Richard G. Morgan.

Mark H. Haskell argued the cause for petitioners Anadarko Petroleum Corporation, et al. With him on the briefs were Gordon Gooch, Dena E. Wiggins, Kristin E. Gibbs, James W. Moeller, J. Kyle McClain, Robert W. Johnson, Michael L. Pate, Charles F. Hosmer, Kevin M. Sweeney, Mickey Jo Lawrence, John E. Dickinson, Norma J. Rosner, Matthew M. Schreck, Eugene A. Lang, and Eugene R. Elrod.

Andrew K. Soto, Attorney, Federal Energy Regulatory Commission, argued the cause for respondent. With him on the brief were Jay L. Witkin, Solicitor, and Susan J. Court, Special Counsel.

Karol Lyn Newman argued the cause for intervenors in support of respondent. With her on the brief were James D. Albright, David W. D'Alessandro, Dennis D. Ahlers, James Howard, Linda M. Billings, Richard Green, Dana C. Contratto, Gary W. Boyle, Jay V. Allen, Francis X. Berkemeier, James F. Moriarty, Frank X. Kelly, Carl W. Ulrich, Drew J. Fossum, and James R. Talcott.

Before: EDWARDS, Chief Judge, SENTELLE and RANDOLPH, Circuit Judges.

Opinion for the Court filed by Circuit Judge RANDOLPH.

RANDOLPH, Circuit Judge:

Petitioners in these consolidated cases are natural gas producers, and the State of Kansas and the Kansas Corporation Commission. Four issues are presented. The first concerns our jurisdiction. The re-

maining three deal with the Federal Energy Regulatory Commission's resolution of proceedings initiated in the wake of *Public Service Co. of Colorado v. FERC,* 91 F.3d 1478 (D.C.Cir.1996).

Although we will presuppose knowledge of our opinion in *Public Service* and its predecessor, *Colorado Interstate Gas Co. v. FERC,* 850 F.2d 769 (D.C.Cir.1988), a description of the issues before us requires some restatement of the litigation that brought this matter to its present posture.

## I. Prior Proceedings

Title I of the Natural Gas Production Act (NGPA), enacted in 1978, imposed maximum lawful prices on first sales of certain categories of natural gas, but § 110 of the NGPA allowed producers to recover from their customers charges in excess of the maximum limits "to the extent necessary to recover ... State severance taxes attributable to the production of such natural gas and borne by the seller." 15 U.S.C. § 3320(a)(1) (1988) (repealed); *see also id.* §§ 3311–3333 (1988) (repealed). After passage of the NGPA, the Commission continued to adhere to an earlier agency opinion[1] treating the Kansas *ad valorem* tax imposed on producers as such a severance tax. *See, e.g., Independent Oil & Gas Ass'n of W.Va.,* 7 F.E.R.C. ¶ 61,094 (1979); *Trio Petroleum Corp.,* 18 F.E.R.C. ¶ 61,203 (1982). In a petition filed on October 4, 1983, several customers of Kansas producers tried unsuccessfully to persuade the Commission to change its mind. *See* Notice of Petition to Reopen, Reconsider and Rescind Opinion No. 699–D, 48 Fed.Reg. 45,287 (1983); *Sun Exploration & Prod. Co.,* 36 F.E.R.C. ¶ 61,093 (1986), *reh'g denied sub nom. Northern Natural Gas Co.,* 38 F.E.R.C. ¶ 61,062 (1987).

On judicial review, we held in *Colorado Interstate* that the Commission's decision

---

1. *See* Opinion No. 699–D, *Just and Reasonable Rates for Sales of Natural Gas,* 52 F.P.C. 915 (1974).

in *Sun Exploration* "fell short of reasoned decision-making." 850 F.2d at 770. We remanded the matter to the Commission so that it might, if it could, offer some "cogent theory of what makes a tax 'similar' to a production or severance tax under § 110" of the NGPA. *Id.* at 773. Five years passed before the Commission acted on remand. In a ruling handed down after Congress had repealed § 110 of the NGPA,[2] the Commission determined that the Kansas *ad valorem* tax was not the equivalent of a severance tax attributable to production and therefore producers already charging the maximum price could not recover the tax from their customers. *See Colorado Interstate Gas Co.*, 65 F.E.R.C. ¶ 61,292 (1993), *reh'g denied,* 67 F.E.R.C. ¶ 61,209 (1994). The Commission ordered the producers to repay all overcharges made after June 28, 1988, when our *Colorado Interstate* opinion issued. Our opinion, the Commission believed, gave the producers sufficient notice to alter their sales practices. *See* 65 F.E.R.C. at 62,372–73, 67 F.E.R.C. at 61,660.

When we reviewed the Commission's action in *Public Service,* we agreed with the Commission's reconsidered position on the Kansas tax. But we disagreed with the Commission about the extent of the producers' refund obligation. In our opinion, "the producers' liability for refunds extends back to October [4,] 1983, the date when all interested parties were given notice in the Federal Register that the recoverability of the Kansas tax under § 110 of the NGPA was at issue." 91 F.3d at 1490. Although "anything short of full retroactivity (*i.e.*, to 1978) allow[ed] the producers to keep some unlawful overcharges without any justification at all," we limited the producers' liability to October 1983 because that was "the earliest date advocated by any party before the court." *Id.*

After our *Public Service* decision issued, the producers invoked the Commission's

procedures for making equitable adjustments to refund payments "as may be necessary to prevent special hardship, inequity, or an unfair distribution of the burdens." 15 U.S.C. § 3412(c). Collectively, the producers advanced two claims not explicitly decided in *Public Service*: they requested a waiver of the interest due on the overcharges they had to repay for the period between October 1983 and June 1988; and they requested a reduction in their repayment obligation to the extent Kansas had overvalued (and thus overtaxed) the gas they had sold under the belief that those taxes were recoverable. In two orders, the second on rehearing, the Commission rejected these petitions for a blanket waiver but said it would allow individual producers to obtain relief upon a sufficient showing of hardship. *See Public Service Co. of Colo.*, 80 F.E.R.C. ¶ 61,264, at 61,952 (1997) (*Public Service Order I*), *reh'g denied,* 82 F.E.R.C. ¶ 61,058, at 61,-213, 61,214 (1998) (*Public Service Order II*). The producers also challenged the Commission's interpretation of the *Public Service* decision's starting date for their repayment obligation. As the Commission read our opinion, the producers were liable to pay refunds of revenues collected in excess of the applicable maximum price based upon any tax bill rendered after October 4, 1983. As against this, the producers argued that the Commission should have prorated the annual tax bill they received from Kansas in 1984, an error which they believed added nine months to the repayment obligation imposed by this court. *See* Reply Brief of Petitioners (Producers) at 19.

## II. Jurisdiction

■ With respect to the portions of the orders denying the producers' request for a generic, or collective, waiver of interest on amounts to be refunded, the Commission tells us the producers are not "ag-

2. On January 1, 1993, the Natural Gas Wellhead Decontrol Act of 1989, Pub.L. No. 101–60, 103 Stat. 157, came into effect, eliminat- ing the price limitations Title I of the NGPA had imposed.

grieved" within the meaning of 15 U.S.C. § 3416(a)(4). The idea is that they may still seek, and the Commission may still grant, individual equitable adjustments based on a producer's unique circumstances. We do not think this possibility eliminates the injury the producers, as a whole, suffered as a consequence of the Commission's rulings. The rulings have "necessary legal significance." *Marathon Oil Co. v. FERC*, 68 F.3d 1376, 1379 (D.C.Cir.1995). For one thing, no producer would need to request individual relief if the Commission had granted a generic waiver of interest. For another, the Commission set procedures in place for the customers to receive refunds back to October 1983, including interest. *See Public Service Order I*, 80 F.E.R.C. at 61,956–57. If the Commission can deny the producers' claim for a waiver of interest *en masse* and order repayment—as it has done—then the producers may petition for judicial review from the Commission's judgment. Otherwise, one might as well say that a class representative has no standing to challenge a district court's order refusing to certify a class because the potential members of the class may still bring individual claims for relief. That, of course, is not the law. *See, e.g., Deposit Guaranty Nat'l Bank v. Roper*, 445 U.S. 326, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980).

*Marathon Oil Co.* is not to the contrary. The details of the case defy brief description. Suffice it to say that the court held only this: injury-in-fact could not be established on the basis of speculation about whether the Commission's refusal to act would affect later determinations by the Internal Revenue Service to grant or deny tax credits. *See* 68 F.3d at 1379. Nothing comparable is present here. There is no

guesswork involved in assessing the impact of the Commission's decision.[3] If the decision stands, a producer could be relieved from having to pay interest only by establishing conditions specific to itself. *See Public Service Order I*, 80 F.E.R.C. at 61,952; *Public Service Order II*, 82 F.E.R.C. at 61,213, 61,214.

### III. Interest

■ The Commission's general policy, in effect for many years, requires interest to be paid on various kinds of overcharges. *See* Natural Gas Policy and Procedures, FERC Statutes and Regulations, Regulations Preambles 1977–1981, ¶ 30,083 (1979), *reprinted in* 44 Fed.Reg. 53,493 (1979), *aff'd United Gas Pipe Line Co. v. FERC*, 657 F.2d 790, 794–96 (5th Cir. 1981). This policy serves three purposes: to "(1) provide just compensation for the losses, or costs, imposed upon those who have paid excessive rates; (2) reflect the benefits which were available to companies which collected excessive rates; and (3) not provide incentives for any party to prolong litigation." *See id.* at 30,546; 44 Fed.Reg. at 53,494. To these ends, the regulation governing price increases for the recovery of severance taxes gave notice that any such increases were "subject to a general obligation to refund any portion of the price, together with interest." 18 C.F.R. § 270.101(2)(e) (1993); *see also* 18 C.F.R. § 154.102(c).

"Compensation deferred is compensation reduced by the time value of money." *In re Milwaukee Cheese Wisconsin, Inc.*, 112 F.3d 845, 849 (7th Cir.1997). In this case, compensation has been deferred for a very long time—so long that the interest on the producers' overcharges now amounts to

---

**3.** In addition to *Marathon,* the Commission cites *Southwest Gas Corp. v. FERC*, 40 F.3d 464, 468 (D.C.Cir.1994), and *Tenneco, Inc. v. FERC*, 688 F.2d 1018, 1022 (5th Cir.1982), neither of which make its point. *Southwest Gas* is a run-of-the-mill decision holding that the petitioner failed to establish any nonspeculative injury resulting from agency action. *Tenneco* merely holds that the petitioner was

not aggrieved by the agency's dismissal of an adjudicatory proceeding in order to allow the agency's newly formed investigative division to gather more evidence before going forward. *See* 688 F.2d at 1021. The dismissal adjudicated nothing; it did not fix petitioner's rights; and it did not command petitioner to do or to refrain from doing anything. *See id.*

160 percent of the principal. *See* Reply Brief of Petitioners (Producers) at 5, 10. The Commission is empowered, by § 502(c) of the NGPA, to make adjustments giving relief from its orders "as may be necessary to prevent special hardship, inequity or an unfair distribution of burdens." 15 U.S.C. § 3412(c). The producers have a list of "equitable" reasons why the Commission should have relieved all of them of having to pay interest: the litigation has gone on forever; the Commission is responsible for much of the delay; the producers relied on the Commission's settled view that the Kansas *ad valorem* tax was a severance tax. We think the Commission rightly brushed these objections aside.

The Commission's legal errors and the snail-like pace of its administrative proceedings are cause for complaint, but are not in themselves grounds for altering the producers' interest obligation. *See Southeastern Michigan Gas Co. v. FERC,* 133 F.3d 34, 42–44 (D.C.Cir.1998). It is the balance of equities between the producers and their customers, not between the producers and the Commission, that matters. As the Commission has recognized, interest is simply a way of ensuring full compensation. *See Public Service Order II,* 82 F.E.R.C. at 61,215. This is why the delay between the time of the customers' injury and the granting of relief is a reason for awarding interest, not for denying it, at least when the delay cannot be laid at the feet of the customers. *See Milwaukee v. Cement Div. of Nat'l Gypsum Co.,* 515 U.S. 189, 196, 115 S.Ct. 2091, 132 L.Ed.2d 148 (1995); *General Motors Corp. v. Devex Corp.,* 461 U.S. 648, 657, 103 S.Ct. 2058, 76 L.Ed.2d 211 (1983). It is why the producers' contention that they are being penalized for their good faith reliance on the Commission's long-standing treatment of the Kansas tax misapprehends the purpose of awarding interest. Interest is not awarded against someone for conducting litigation in bad faith; it is, as the Commission knew, awarded to make the prevailing party whole. *See National Gypsum Co.,* 515 U.S. at 196–97, 115 S.Ct. 2091.

The Commission gave careful consideration to each of the "equitable" reasons the producers offered for a generic waiver of interest and said this: "granting a generic waiver of interest of the *ad valorem* Kansas refunds ordered by *Public Service* would be inconsistent with the Court's mandate." *Public Service Order II,* 82 F.E.R.C. at 61,214. That the Commission correctly read our *Public Service* opinion cannot be doubted. We there rejected the producers' equitable arguments against full refunds back to 1983, arguments the producers now repeat in support of their request for a generic waiver of interest regarding the same period. In holding that the producers "must refund the full amount that they unlawfully collected," 91 F.3d at 1490, we determined that the producers had not established "detrimental reliance," *id.*;[4] that even if they had relied on the Commission's treatment of the Kansas tax, passage of the NGPA and the 1983 petition challenging this treatment rendered their reliance unreasonable, *id.*; and that "we are hard pressed to see how the producers would be harmed in any cognizable way even if they were required to disgorge every dollar they received in recovery of the tax," *id.* In view of these and other portions of our *Public Service* opinion, the Commission properly concluded that it should not grant a generic waiver of interest because, to do so, it would have to assess the equities in a manner contrary to *Public Service.*[5]

---

**4.** This part of our *Public Service* decision distinguishes *Panhandle Eastern Pipe Line Co. v. FERC,* 95 F.3d 62 (D.C.Cir.1996), in which we sustained the Commission's order mandating a refund without interest because the Commission's error not only prolonged the litigation, but also caused the losing party to forego a viable alternative means of recovering from the prevailing party. *See id.* at 67–68.

**5.** Whether the Commission's determination that *Public Service* "foreclosed the granting of

*Estate of French v. FERC*, 603 F.2d 1158 (5th Cir.1979), which the producers invoke, does not favor a different outcome. The court of appeals held that "equitable considerations" did not allow the Commission to award interest against a petitioner seeking an economic hardship waiver for the seven years it took to decide his claim because a delay of that length was unreasonable per se. *See id.* at 1167–68. Here, by contrast, the Commission acted quite promptly on the producers' petition for a waiver of interest. There may have been untoward delay here, but it occurred between our remand in *Colorado Interstate* and the Commission's reversal of its treatment of the tax. There is an ocean of difference between being required to pay interest on a lawful obligation (as the producers are being required to do here) and being required to pay interest while waiting for the Commission to decide whether one deserves a hardship waiver (which is what the court refused to allow in *French*).

## IV. Tax-on-Tax

■ One of the curious features of the complex system by which Kansas taxed the production of natural gas was the way in which assessors "grossed up" the value of the gas by approximately 10 percent to reflect the producers' ability to recover the Kansas tax at the time of sale. *See Ensign Oil & Gas, Inc.*, 71 F.E.R.C. ¶ 61,204, at 61,750 (1995). The producers now argue that the Commission should reduce the amount of their refund liability to their customers by the amount of this "tax-on-tax" because it rested on the false assumption that they could recover the tax and because they now have no way of recouping the inflated taxes they paid to Kansas. We hold that the Commission properly determined that the producers are responsible for refunding the Kansas tax-on-tax.

In terms of equity, the tax-on-tax problem disturbed the balance of equities between the producers and Kansas, not between the producers and their customers. There is no reason why, in the Commission's words, "overcharged consumers should forego refunds they are entitled to, to the extent producers paid more *ad valorem* taxes to Kansas localities than they should have." *Public Service Order II*, 82 F.E.R.C. at 61,219.[6]

## V. Refund Date

■ In *Public Service*, we said that we would "not require refunds of taxes recovered with respect to production before October 1983 because there is before us no controversy over those monies." *Public Service*, 91 F.3d at 1490–91. Our use of the phrase "with respect to production," which appears three times in the opinion, *see id.* at 1490, 1492, has generated some confusion, particularly in view of our decision on the merits that the Kansas tax was not a severance tax attributable to production within § 110's meaning. 91 F.3d at 1482–86. On remand, the Commission interpreted taxes "with respect to production" to mean "revenues collected based upon any tax bill rendered after October 4, 1983," *Public Service Order II*, 82 F.E.R.C. at 61,220; *accord Public Service Order I*, 80 F.E.R.C. at 61,953 n. 25. Because Kansas levied its *ad valorem* tax annually and collected it through a bill sent toward the end of each year, the producers objected to the Commission's

relief on a generic basis to all producers, regardless of their individual circumstances," *Public Service Order II*, 82 F.E.R.C. at 61,214, is inconsistent with its statement that it retains equitable discretion to adjust individual producer liability in cases of hardship, *see id.*; *see also id.* at 61,217, is a question not before us and one on which we reach no judgment. Our decision today does not affect the Commission's established standards for granting hardship waivers and does not prohibit indi-

vidual parties from seeking hardship waivers in a proceeding under NGPA § 502(c), 15 U.S.C. § 3412(c).

**6.** Given this ground of decision in *Public Service Order II*, there is no need for us to address the producers' arguments that the Commission misconstrued *Ensign Oil & Gas, Inc.*, 71 F.E.R.C. ¶ 61,204 (1995), in *Public Service Order I*.

interpretation because it appeared to them to impose an additional nine months of liability. *See* Reply Brief of Petitioners (Producers) at 19. We find ourselves in agreement with neither the Commission nor the producers. Both focus on the tax transaction between producers and Kansas rather than the sales transactions between the producers and their customers. Our decision in *Public Service* required the producers to refund all taxes passed through to customers after October 4, 1983. In other words, the phrase "with respect to production" means "when sold."

*Public Service* used the prepositional phrase "with respect to production" three times to modify three different objects. The opinion first stated that "we do not require refunds of *taxes recovered* with respect to production before October 1983." 91 F.3d at 1491–92 (emphasis added). Here, "taxes recovered" means taxes passed through at sale because that is how taxes are "recovered." The second instance is this: "Producers are liable to refund all Kansas ad valorem *taxes collected* with respect to production since October 1983." *Id.* at 1492 (emphasis added). Here, the natural first reading of "taxes collected" might be taxes levied by Kansas because we normally think of states, not private entities, as tax collectors. In context, however, the better reading of "taxes collected" is taxes collected from customers through higher prices. The final instance is: "The customers are limited, however, to recovery of *taxes paid* with respect to production since October 1983 . . . ." *Id.* (emphasis added). This last sentence focuses most clearly on the sales transaction rather than the tax transaction because it is the customers who are doing the paying. In order to show that this is the correct interpretation, we need to look at the way the taxation and recovery process worked.

During the period in question, Kansas would send a tax bill to the producers near the end of the year assessing a well's raw value during the previous year. *See Public Service*, 91 F.3d at 1484. That value was determined by a number of factors including the volume of the reserve, the physical capital at the well site, and the rate of production. *See id.* at 1484–85. It is also significant that the rate of production factor was averaged over the lengthier of two time periods—three or five years—whenever production had lasted that long. *See id.* at 1484. After receiving the state tax bill for a given year, the producers would take advantage of the federal recovery policy by raising their prices in individual transactions to reflect their individual tax liability.

Between October 1983 and January 1984, the producers overcharged customers to recover state taxes assessed against the value of their wells in 1982. The producers seem to argue that one should look only to the tax bill they received from Kansas in 1984 for the 1983 tax year and then reduce it by roughly 75% (assuming even production over the year).[7] That argument focuses on the tax transaction, which is the wrong transaction. The transaction that caused the harm is the sales transaction, and it is the overcharges made in those individual transactions (plus interest) that the producers must now repay.[8]

## VI. Kansas

The State of Kansas and the Kansas Corporate Commission joined in this litiga-

---

7. An accurate calculation would be far more complex because of variations in production levels, especially when a well is new. *See Public Service*, 91 F.3d at 1483–85; *Colorado Interstate*, 850 F.2d at 773.

8. We are aware that although our decision reverses the Commission, it might put the producers in a worse position than they would have been if they had not challenged the Commission's starting date for refunds. At oral argument, we suggested this possible outcome to producers' counsel, but despite receiving notice, the producers continued to press their objection to the Commission's date.

tion to mitigate the "real and severe.... impact on the gas industry in Kansas as a whole and the economy of the state of Kansas as a whole." Final Initial Brief of Petitioners (Kansas) at 13. While it may be true that interest refunds could cause some marginal producers to fold, it is hard to see how the people of Kansas have actually been injured. Kansas was able to collect taxes during this entire period (including their "tax-on-tax"); it has enjoyed the time value of this money; and no one is asking the State to pay back anything. If it is important to Kansas to limit the economic damage on marginal producers, it retains numerous avenues for aiding them. It appears, however, the only action taken by Kansas with respect to the producers' refund liability was adverse. *See* KAN. STAT. ANN. § 55–1624 (enacted Apr. 20, 1998). Indeed, some of the producers in this case have already petitioned the Commission for equitable relief from losses resulting from the state law. *See* Notice of Motion for Waiver, 63 Fed.Reg. 30,736 (1998).

\* \* \*

For the reasons stated, the Commission's decision regarding the starting date for refunds is set aside and the cases are remanded for the entry of an order prescribing a starting date consistent with this opinion. In all other respects, the petitions for judicial review are denied.