**Justin HILL, et al., Plaintiffs,**

**v.**

**KANSAS GAS SERVICE COMPANY, et al., Defendants.**

**Civil Action No. 01–2315–CM.**

United States District Court,
D. Kansas.

Feb. 12, 2002.

C. Edward Peterson, Stuart W. Conrad, Flinnegan, Conrad & Peterson, Kansas City, MO, for Plaintiffs.

John P. DeCoursey, Larry M. Cowger, Shawnee Mission, KS, Karl Zobrist, Brian D. Martin, Blackwell Sanders Peper Martin LLP, Kansas City, KS, for Defendants.

Robert A. Fox, Foulston & Siefkin, L.L.P., John J. McNish, Kansas Corporation Commission, Topeka, KS, William F. Demarest, Jr., Shook, Hardy & Bacon, LLP, Washington, DC, for Movants.

## MEMORANDUM AND ORDER

MURGUIA, District Judge.

Plaintiffs filed this class action lawsuit pursuant to the Natural Gas Policy Act (NGPA), 15 U.S.C. § 3301 et seq., and 42 U.S.C. § 1983. Plaintiffs seek a declaratory judgment that plaintiffs have a property interest in certain refunds defendants have received, and will receive, related to the Kansas ad valorem tax refunds that interstate pipelines paid to natural gas producers from 1983 through 1988. Plaintiffs request an order placing the refunds into a constructive trust and appointing an independent fiduciary to oversee the trust pending final resolution of this action. Finally, plaintiffs assert that they are third party beneficiaries of certain agreements that resulted in overcharges of Kansas ad valorem taxes. Plaintiffs claim such overcharges should be directed to plaintiffs and other retail customers. This matter is before the court on defendants Kansas Gas Service Company (KGS), Greely Gas Com-

pany, and Utilicorp United, Inc.'s motions to dismiss (Docs. 7 & 9). Additionally, defendants request that the court hear oral argument (Doc. 28), which is denied. Finally, the Kansas Corporation Commission (KCC) has filed a motion for leave to file an amicus brief in support of the motions to dismiss (Doc. 19). KCC's motion for leave to file an amicus brief is unopposed and is therefore granted.

## I. Background Facts

This case involves the sale and taxation of natural gas. The sale of natural gas can be classified as part of a three-tiered structure. The first tier of transactions is the sale by producers of natural gas to interstate pipelines. The second tier involves resales of gas by interstate pipelines to local distribution companies (LDCs). The final tier of transactions involves resales of natural gas by LDCs to retail consumers.

Defendants in this case are LDCs. Plaintiffs claim they were retail customers of defendants during the relevant time period (1983 through 1988). During that time, Kansas ad valorem taxes were charged by producers to interstate pipelines. The interstate pipelines in turn added those amounts to the price of natural gas supplied to LDCs, who in turn passed the costs of the ad valorem taxes to their retail customers. As discussed in more detail below, the Federal Energy Regulatory Commission (FERC) determined that the ad valorem taxes were improperly added by producers to the cost of natural gas and, accordingly, ordered the amounts overcharged to be refunded. Plaintiffs claim an interest in those refunds which the defendant LDCs have received and expect to receive.

### A. The FERC Proceedings

The NGPA provided that first sellers of natural gas (producers) could not sell their gas at a price above certain levels established by the NGPA. The NGPA did allow producers to recover severance, production, and other similar related taxes over and above the maximum lawful price. In 1983, a complaint was filed at the FERC, claiming that payment of the Kansas ad valorem tax violated the NGPA. The complaint charged that the Kansas ad valorem tax was not a severance or production related tax and that reimbursement of such tax to a producer violated the NGPA to the extent that the overall price paid to the producer for gas exceeded the price established under the NGPA.

Interstate pipelines continued to pay the tax to producers while the complaint worked its way through FERC and the appellate courts. In 1993, FERC issued a ruling that the Kansas ad valorem tax was not related to a severance or production tax and ordered producers to pay refunds from 1988 forward. In 1997, FERC issued another order requiring producers to remit refunds for excess charges from the date the complaint was filed, which was October 4, 1983. FERC denied several petitions for rehearing, and ultimately the FERC orders were upheld on appeal.

### B. The KCC Proceedings

Following the FERC orders, the KCC opened a docket to determine how the Kansas ad valorem tax refunds should be distributed. In the meantime, it began to appear that prices for the coming winter of 2000 would be significantly higher, so the KCC established a task force to address methods that would assist customers with the expected higher gas bills. In December 2000, defendant KGS filed an application with the KCC, requesting approval of a low income heating assistance plan. On January 2, 2001, the KCC approved a Stipulation and Agreement, whereby defendant KGS would provide financial assistance to low income customers, with the

cost of the program being offset by a portion of the Kansas ad valorem refunds that defendant KGS already had received (about $12.9 million at the time).

On January 18, 2001, Midwest Gas Users Association (MGUA)[1] filed a petition for reconsideration of the KCC's January 2, 2001 order, claiming that the funds being held by defendant KGS also should be distributed to transportation customers. On February 19, 2001, the KCC ordered a hearing on MGUA's petition for reconsideration. The KCC held hearings in early March 2001. Then, on March 9, the KCC ordered that formal notice of the hearings be published in daily newspapers throughout the State of Kansas. The hearings continued on April 4 and were completed on April 10. MGUA participated in the hearings.

On May 3, 2001, KCC issued its order (May 3 Order) directing defendants KGS, Greely, and Utilicorp to distribute all Kansas ad valorem tax refunds to low income customers. The May 3 Order further required each LDC to file a plan for distribution of the refunds. MGUA and three other industrial intervener groups filed petitions for reconsideration of the May 3 Order. On May 21, 2001, defendants KGS and Utilicorp filed their distribution plans as required by the KCC's May 3 Order.

On June 20, 2001, MGUA filed a petition in Johnson County District Court seeking judicial review of the KCC's plan and a temporary restraining order halting its implementation. The court denied MGUA's request for a temporary restraining order.

On June 25, 2001, plaintiffs filed the instant lawsuit through the same attorneys representing MGUA before the KCC, the state court, and at FERC.

On June 29, 2001, the KCC issued an order (June 29 Order) denying the petitions for reconsideration filed by the industrial interveners. The June 29 Order stated that it was a nonfinal agency order and that the KCC retained jurisdiction to issue further orders regarding the low income distribution plans filed by the LDCs. On July 6, 2001, the KCC approved (July 6 Order)[2] the low income distribution plans submitted by defendants. The KCC declared that any party could file a petition for reconsideration of the July 6 Order within 15 days. To date, plaintiffs have not petitioned for reconsideration.

## II. Standards

The court may only exercise jurisdiction when specifically authorized to do so, *Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir.1994), and must "dismiss the cause at any stage of the proceeding in which it becomes apparent that jurisdiction is lacking." *Scheideman v. Shawnee County Bd. of County Comm'rs*, 895 F.Supp. 279, 281 (D.Kan.1995) (quoting *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir.1974)); Fed.R.Civ.P. 12(h)(3). The party who seeks to invoke federal jurisdiction bears the burden of establishing that such jurisdiction is proper. *Basso*, 495 F.2d at 909. When federal jurisdiction is challenged, plaintiff bears the burden of showing why the case should not be dismissed. *Jensen v. Johnson County Youth Baseball League*, 838 F.Supp. 1437, 1439–40 (D.Kan.1993).

---

**1.** MGUA is an unincorporated association whose attorneys are the same attorneys representing plaintiffs in this action. Plaintiffs Lawrence Paper Company and W.S. Dickey Clay Products Manufacturing Company are members of MGUA.

**2.** The court will refer to the May 3 Order, June 29 Order, and July 6 Order collectively as the "KCC's Orders."

A party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends. When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations. *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir.1995). A court has wide discretion to allow affidavits and other documents to resolve disputed jurisdictional facts under Rule 12(b)(1). *Id.* In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion for summary judgment. *Id.*

## III. Discussion

Defendants argue that plaintiffs' complaint should be dismissed for lack of subject matter jurisdiction. Specifically, defendants rely on the Johnson Act, 28 U.S.C. § 1342, which precludes federal courts from retaining jurisdiction over any order affecting rates chargeable by a public utility and made by a state administrative agency. The Johnson Act provides:

The district courts shall not enjoin, suspend or restrain the operation of, or compliance with, any order affecting rates chargeable by a public utility and made by a State administrative agency or a rate-making body of a State political subdivision, where:

(1) Jurisdiction is based solely on diversity of citizenship or repugnance of the order to the Federal Constitution; and,

(2) The order does not interfere with interstate commerce; and,

(3) The order has been made after reasonable notice and hearing; and,

(4) A plain, speedy and efficient remedy may be had in the courts of such State.

If the Johnson Act applies, a federal court is precluded from asserting jurisdiction over actions seeking both declaratory and injunctive relief. *Tennyson v. Gas Serv. Co.*, 506 F.2d 1135, 1139 (10th Cir.1974). "The evil sought to be remedied by the Johnson Act was the federal courts' interference with the states' own control of their public utility rates." *Id.* at 1137. Moreover, "by its broad wording it is clear that [the Johnson Act] was intended to keep constitutional challenges to orders affecting rates out of the federal courts 'lock, stock and barrel.'" *Id.*

### A. Order Affecting Rates

The Johnson Act does not deprive a federal court of jurisdiction unless the challenge is to an "order affecting rates" and each of the four enumerated conditions is present. *U.S. West, Inc. v. Tristani*, 182 F.3d 1202, 1207 (10th Cir.1999). Thus, the threshold question under the Johnson Act is whether a plaintiff's complaint challenges an order affecting rates chargeable by a public utility and made by a state administrative agency. *Id.* (citing 28 U.S.C. § 1342).

Plaintiffs contend that their claim is based upon the rulings of the federal district courts and circuit courts of appeal, namely *Colo. Interstate Gas Co. v. FERC*, 850 F.2d 769 (D.C.Cir.1988), *Pub. Serv. of Colo. v. FERC*, 91 F.3d 1478 (D.C.Cir. 1996), and *Anadarko Petroleum Co. v. FERC*, 196 F.3d 1264 (D.C.Cir.1999). In these cases, the courts ruled that the Kansas ad valorem taxes were unlawfully collected in violation of the ceiling prices established under NGPA and that the overcharges should be refunded. Plaintiffs argue that, because their claim derives from the rulings in these cases, they are not challenging the orders of the KCC and that it is unnecessary for the court to review the KCC's Orders to resolve this case.

The federal courts held that the ad valorem taxes which were unlawfully collected

must be refunded. Plaintiffs do not challenge these decisions. Rather, plaintiffs challenge the KCC's Orders that directed the refunds to be distributed to low income customers. The court finds that plaintiffs are in fact challenging the KCC's Orders.

The court must now determine whether the KCC's Orders are in fact "orders affecting rates." Plaintiffs point to the language of the May 3 Order itself in an effort to convince the court that the KCC's Orders do not affect rates. Plaintiffs cite to paragraph 72 on page 30 of the May 3 Order, wherein the KCC stated, "However, here, the PGA [Purchased Gas Adjustment] tariffs are not being changed, prospectively or retrospectively, but are being applied exactly as written." Later in the May 3 Order at paragraph 76 on page 32, the KCC stated, "No party has suggested a permanent rate discount or other form of special rate for the low income customers, and the Commission does not establish one in this case."

Plaintiffs' argument, that the language of the May 3 Order demonstrates that the order does not affect rates, is unavailing. At best, the language of the May 3 Order is unclear as to how the KCC views the effect of its order. The KCC states that the order does not establish a permanent rate discount or a special rate for low income customers. However, there is no requirement that to qualify as an order affecting rates, the order must **permanently** change a utility's rates or establish some sort of **special** rate. Further, there is no express requirement that a rate even be **changed.** Rather, under the express terms of the Johnson Act, the order being challenged must only "affect rates." Thus, an order directing a utility not to change its rates can still be an order which affect rates.

In support of their argument that the KCC's Orders affect rates, defendants direct the court to the language of the June 29 Order. As indicated in footnote 1 on page 3 of the June 29 Order, the KCC stated, "Because this case in controlled by the PGA [Purchased Gas Adjustment] and COGR [Cost of Gas Rider] tariffs of several utilities, **it is a rate proceeding** as determined by the Court of Appeals." (emphasis added). The KCC reinforced that position in paragraph 19 on page 10 of the June 29 Order by stating, "The May 3 Order is a rate order."

Plaintiffs argue that the KCC's statement that the May 3 Order is a rate order is merely a bald assertion without any foundation. However, the KCC's own view of whether its order affects rates is entitled to deference. *Tennyson,* 506 F.2d at 1140. In Tennyson, the plaintiffs filed a class action lawsuit under § 1983, claiming that certain late payment charges constituted usurious interest. The Tenth Circuit determined that the late payment charges fell within the umbrella of an "order affecting rates." Significant to the court was the KCC's own interpretation of the meaning of the charges. "Most useful to us, from a standpoint of the Kansas rate structure, is the State Corporations Commission's recent finding that 'late payment charges in question do not constitute interest.'" *Id.*; see also *Grindsted Prods., Inc. v. Kan. City Power & Light Co.,* 21 Kan. App.2d 435, 445, 901 P.2d 20, 26 (1995) (holding that KCC has jurisdiction over issues of tariff interpretation and excessive charge claims against public utilities).

Even without considering the KCC's interpretation of its order, it is apparent that the KCC's Orders in fact affect rates. The KCC's Orders mandate that the defendant utilities credit the refunded ad valorem taxes to low income customers. This will be done by crediting amounts to the natural gas accounts of these customers. The rates paid by those customers will therefore be affected (i.e., they will pay less for gas). Moreover, because plaintiffs claim

they are entitled to receive refunds for amounts paid under rates existing in the 1980s, it appears evident that plaintiffs indeed dispute an order affecting rates plaintiffs previously paid.

The court concludes that the KCC's Orders of May 3, 2001, June 29, 2001, and July 9, 2001 are orders "affecting rates" as contemplated by the Johnson Act. The court now turns to the issue of whether the four enumerated conditions set forth in the Johnson Act are satisfied.

## B. Four Johnson Act Conditions

### 1. First Condition—Jurisdiction

■ In order to avoid application of the Johnson Act, plaintiffs must assert a basis for federal jurisdiction other than diversity or a constitutional violation. 28 U.S.C. § 1342(1). Plaintiffs in this case assert a claim under § 1983. It is clear that plaintiffs may not plead violations of § 1983 to avoid the Johnson Act. *Tennyson*, 506 F.2d at 1139 (dismissing plaintiff's § 1983 action pursuant to the Johnson Act); *Peoples Nat'l Util. Co. v. City of Houston*, 837 F.2d 1366, 1368 (5th Cir.1988) (holding that plaintiff cannot use § 1983 as an "end run" around the Johnson Act).

■ However, plaintiffs also argue that independent jurisdiction exists under the NGPA. Plaintiffs contend that violations of the NGPA led to the judicial rulings that produced the refunds, and that construction of the NGPA and the judicial rulings is necessary to determine whether plaintiffs have a property right to the refunds. Plaintiffs assert that, because determination of this case is a matter of federal law, they have raised a federal question that warrants federal jurisdiction.

Plaintiffs cannot assert jurisdiction under the NGPA.[3] The NGPA determines the maximum lawful price of natural gas for first sales between producers and first purchasers (interstate pipelines). The NGPA applies solely to "first sales" of natural gas and expressly excludes from its auspices the sale of natural gas "by any interstate pipeline, intrastate pipeline, or local distribution company, or any affiliate thereof, unless such sale is attributable to volumes of natural gas produced by such interstate pipeline, intrastate pipeline, or local distribution company, or any affiliate thereof." 15 U.S.C. § 3301(21). Defendants herein are LDCs who did not produce but rather purchased natural gas from other parties. The defendants' sale of that gas to their customers thus was not a "first sale" within the meaning of the NGPA, and the NGPA has no application to the defendants' sale of gas to their customers or to refunds from those sales.

Plaintiffs fail to recognize that any statutory policy that gives rise to an entitlement to refunds for violation of the NGPA's maximum price rules necessarily applies only to the parties to whom such regulated "first sales" were made. The refunds about which plaintiffs complain flow from transactions to which plaintiffs were not parties. Moreover, defendants in this case also were not parties to "first sale" transactions. Rather, defendants purchased gas from interstate pipelines, who in turn purchased gas from producers in "first sale" transactions. Plaintiffs therefore were two steps removed from any NGPA regulated transaction. There simply is no federal question arising under the NGPA with respect to any refunds defendants may receive from their interstate pipeline suppliers. Plaintiffs enjoy no federal entitlement to a refund under the NGPA.

---

**3.** The section of the NGPA dealing with the Kansas ad valorem refunds has since been repealed. 15 U.S.C. § 3320.

Even if the NGPA applied to this case, jurisdiction of this court would still be lacking. FERC has exclusive jurisdiction to administer the NGPA. 15 U.S.C. § 3411. Once a party has exhausted its remedies before FERC, any appeals of FERC's decision must be to either the United States Court of Appeals for the District of Columbia or the federal court of appeals for the circuit in which the party to whom that order relates is located. 15 U.S.C. § 3416(a)(4). Thus, in no event would jurisdiction be proper. Rather, the distribution of such refunds by LDCs is wholly a matter of state law that implicates no federal question.[4]

Plaintiffs also attempt to base jurisdiction upon the opinions of the United States Court of Appeals for the District of Columbia, in which the court ruled that the Kansas ad valorem taxes were unlawfully collected in violation of the ceiling prices established under NGPA and that the overcharges should be refunded. *Colo. Interstate Gas Co. v. FERC,* 850 F.2d 769 (D.C.Cir.1988); *Pub. Serv. of Colo. v. FERC,* 91 F.3d 1478 (D.C.Cir.1996); *Anadarko Petroleum Co. v. FERC,* 196 F.3d 1264 (D.C.Cir.1999). Plaintiffs argue that those federal decisions state that refunds should go to the retail customers who paid

the overcharges and that, as a result, a federal question is presented whether state action (through the KCC) can frustrate federal precedent. In support, plaintiffs cite the following language:

> Producers are liable to refund all Kansas ad valorem taxes collected with respect to production since October 1983.... There is no substantive reason, therefore, to deny customers all the relief to which they are entitled.

*Pub. Serv. of Colo.,* 91 F.3d at 1492.

> There is no reason why, in the Commission's words, **"overcharged consumers should forego refunds they are entitled to,** to the extent producers paid more ad valorem taxes to Kansas localities than they should have."

*Anadarko Petroleum Co.,* 196 F.3d at 1269 (emphasis in plaintiffs' opposition brief).

> Our decision in Public Service required the producers to refund all taxes **passed through to customers** after October 4, 1983.

*Id.* at 1270 (emphasis in plaintiffs' opposition brief).

Upon review, the court does not interpret the foregoing opinions as demonstrating an intent to bestow upon FERC regulatory authority to order refunds by LDCs to their consumers.[5] For example, any

---

4. FERC recognized this when it twice denied MGUA's request to place the Kansas ad valorem tax refunds in a constructive trust:

> We deny MGUA's request to direct refunds to be paid in trust or to certain former customers directly. To the extent that MGUA's members were customers of Kansas LDCs and are concerned about what portion of the LDC's refunds are flowed through to them, we have held that the **distribution of refunds by an LDC is a matter within the purview of state and local regulatory agencies.**

*Williams Gas Pipelines Central, Inc.,* 2001 WL 367630, 95 FERC ¶ 61,055 at p. 13 (F.E.R.C. April 12, 2001) (FERC's initial order approving February 23, 2001 settlement) (emphasis added).

> We lack jurisdiction over the rates charged by local distribution customers. **Charges and refunds by local distribution companies are within the purview of state and local regulatory agencies.**

*Williams Gas Pipelines Central, Inc.,* 2001 WL 36763095 FERC ¶ 61,3666 at 6–7 (FERC's order denying MGUA's request for rehearing) (emphasis added).

5. This is especially true when the opinions are considered along with FERC's unequivocal statements that it lacked jurisdiction over the rates charged by LDCs and that refunds by LDCs are within the purview of state and local regulatory agencies.

implication that the reference to "customers" in Anadarko means retail consumers is dispelled by the immediately preceding sentence in Anadarko: Identifying the proper focus of the inquiry concerning the date upon which the refunds should relate back, the court distinguished between "the tax transactions between producers and Kansas" and "the sales transactions between the producers and **their** customers." *Id.* at 1270 (emphasis added). Thus, when read in context, it appears that the "customers" to whom "producers" were required to make refunds were "their customers," (i.e., interstate pipelines), and not the plaintiffs in this case.

Likewise, the single reference to "consumers" in Anadarko does not support plaintiff's position. The cited passage is a statement by FERC, quoted by the D.C. Circuit, which involved the issue of whether producers could reduce the amount of their refund by the amount they had overpaid in property taxes (referred to as the tax-on-tax issue). The producers had argued that, during the time they received reimbursement of ad valorem taxes from the interstate pipelines, the value of their properties was higher and that they paid higher property taxes to the local taxing authorities as a result. The sentence immediately preceding plaintiffs' cited passage states, "In terms of equity, the tax-on-tax problem disturbed the balance of equities between the producers and Kansas, not between the producers and **their** customers." *Id.* at 1269 (emphasis added). Thus, there is no indication that the court intended the term "consumers" in the following sentence to refer to retail customers. To the contrary, when read in context, the statement upon which plaintiffs rely supports the position that the court intended the refunds to go to the producer's customers (i.e., interstate pipelines) rather than to the plaintiffs in this case.

The court finds that plaintiffs have failed to articulate a basis for jurisdiction other than diversity of citizenship or repugnance to the Constitution. There exists no jurisdiction under the NGPA, nor have plaintiffs presented a federal question based on the holdings of the D.C. Circuit. Thus, the first condition under the Johnson Act is met.

**2. Second Condition—Interstate Commerce**

■ Plaintiffs do not argue that the orders at issue interfere with interstate commerce. The court finds that, because the matter involves only the relationship between the defendant utilities and their Kansas customers, any effect on interstate commerce is tangential at best. Accordingly, the second condition of the Johnson Act is satisfied. *Tristani,* 182 F.3d at 1210–11 ("Interference requires more than an incidental effect on interstate commerce.").

**3. Third Condition—Notice**

■ Plaintiffs contend that the May 3 Order was issued without adequate notice. The hearings were initially conducted on March 6 and 7, 2001. In the midst of those hearings, plaintiffs' counsel complained that adequate notice of the hearings had not been given. The KCC adjourned the hearing until April 4, 2001, and ordered that notice of the hearings be published in the meantime in daily newspapers throughout the state. Plaintiffs argue that such notice was "late and weak."

The court finds that sufficient notice of the hearings was provided, particularly in light of the fact that plaintiffs' counsel in this case attended the hearings, as did at least three of the plaintiffs. The Johnson Act requires no more notice "than that which is appropriate to an 'order affecting rates.'" *Tennyson,* 506 F.2d at 1141.

When viewed in light of the fact that the regulation of public utilities is legislative in nature, *id.*, the court concludes that the timing and manner of notice provided by KCC satisfies the third condition of the Johnson Act.

### 4. Fourth Condition—State Remedy

■ Plaintiffs do not contest that a plain, speedy, and efficient remedy may be had in the state courts. Plaintiffs have a right to appeal the KCC's orders directly to the Kansas Court of Appeals after exhausting their administrative remedies before the KCC. Kan. Stat. Ann. § 66–118a(b) ("The court of appeals shall have exclusive jurisdiction to review any agency action of the state corporation commission arising from a rate hearing requested by a public utility or requested by the state corporation commission."). The fourth condition of the Johnson Act is therefore satisfied.

### IV. Conclusion

The court determines that the orders which plaintiffs challenge are in fact "orders affecting rates." Furthermore, the court concludes that the four conditions set forth in the Johnson Act are met. Accordingly, the Johnson Act bars this court from exercising jurisdiction over this case.[6]

**IT IS THEREFORE ORDERED** that KCC's motion for leave to file amicus brief in support of motion to dismiss (Doc. 19) is granted.

**IT IS FURTHER ORDERED** that defendants' request for oral argument (Doc. 28) is denied.

**IT IS FURTHER ORDERED** that defendants Kansas Gas Service Company, Greely Gas Company, and Utilicorp United, Inc.'s motions to dismiss (Docs. 7 & 9)

6. Defendants also argue that this case should be dismissed based on the principles of comity and abstention and because plaintiffs have failed to exhaust their administrative reme-

are granted. This case is hereby dismissed.

dies. Because the court dismisses this case pursuant to the Johnson Act, the court declines to address these issues.