**LOUISIANA PUBLIC SERVICE COMMISSION, Petitioner**

v.

**FEDERAL ENERGY REGULATORY COMMISSION, Respondent.**

**Arkansas Public Service Commission, et al., Intervenors.**

Nos. 12–1282, 13–1295.

United States Court of Appeals, District of Columbia Circuit.

March 13, 2015.

**2**

Noel Joseph Darce, Michael R. Fontham, Paul Lewis Zimmering, Stone Pigman Walther Wittmann LLC, New Orleans, LA, for Petitioner.

Lona T. Perry, Robert Harris Solomon, Esquire, Samuel Soopper, David Leo Morenoff, Federal Energy Regulatory Commission (FERC) Office of the Solicitor, Washington, DC, for Respondent.

Mary W. Cochran, Esquire, Arkansas Public Service Commission, Little Rock, AR, Dennis Lane, Stinson Leonard Street LLP, Daniel Barnowski, Clinton Andrew Vince, Jennifer Anne Morrissey, Dentons U.S. LLP, Andrea Weinstein, Entergy Services, Inc., Matthew Weaver Steele Estes, John Stewart Moot, Skadden, Arps, Slate, Meagher & Flom LLP, Alan J. Statman, Michael J. Thompson, Wendy Barrett Warren, Wright & Talisman, PC, Washington, DC, Chad James Reynolds, Mississippi Public Utilities Staff, Jackson, MS, for Intervenors.

Entergy Services, Inc., Washington, DC, pro se.

Before: TATEL, Circuit Judge, and EDWARDS and RANDOLPH, Senior Circuit Judges.

1. The Entergy Operating Companies produce electricity in Arkansas, Louisiana, Mississippi, and Texas. The Arkansas company ended its participation in the System Agreement in De-

*JUDGMENT*

PER CURIAM.

These petitions for review of Federal Energy Regulatory Commission orders were presented to the court and briefed and argued by counsel. The court has accorded the issues full consideration and has determined that they do not warrant a published opinion. *See* D.C.Cir. R. 36(d). It is

**ORDERED AND ADJUDGED** that the petition for review by Louisiana Public Service Commission be dismissed in part and denied in part and the petition for review by Entergy Services, Inc. be denied for the reasons stated in the memorandum accompanying this judgment.

Pursuant to Rule 36 of this Court, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate herein until seven days after the disposition of any timely petition for rehearing or petition for rehearing *en banc. See* FED. R.APP. P. 41(b); D.C.Cir. R. 41.

*MEMORANDUM*

In these consolidated cases, the Louisiana Public Service Commission (No. 12–1282) and Entergy Services, Inc. (No. 13–1295) petition for review of Commission orders regarding a bandwidth remedy that redistributes payments to roughly equalize energy production costs across Entergy's operating companies. *See generally La. Pub. Serv. Comm'n v. FERC,* 522 F.3d 378, 383–84 (D.C.Cir.2008) (per curiam) (describing the Entergy system).[1] In 2008, we denied Louisiana PSC's petition for review of the bandwidth remedy, find-

cember 2013, and the Mississippi one will do so in November 2015, according to the Commission.

ing that the remedy was not arbitrary and capricious. *Id.* at 391–94. This case arises out of the first of the annual proceedings established by the Commission to implement the remedy.[2]

## I.

We begin by reviewing the lengthy history of the Commission orders at issue in the petitions before us.

In 2001, Louisiana PSC filed a complaint asserting that the cost allocation among the Entergy Operating Companies had become unjust, unreasonable, and unduly discriminatory under the Federal Power Act. *La. Pub. Serv. Comm'n,* 522 F.3d at 385–86; *see* 16 U.S.C. §§ 824d(b), 824e(a). In 2005, the Commission agreed and adopted a remedy, establishing a bandwidth of plus or minus eleven percent from which production costs could deviate from the system average. *See La. Pub. Serv. Comm'n v. Entergy Servs., Inc.,* Opinion No. 480, 111 FERC ¶ 61,311 PP 1, 144, *reh'g,* Opinion No. 480–A, 113 FERC ¶ 61,282 (2005). Better performing Operating Companies were to tender payments to companies performing less well to roughly equalize production costs. The Commission ruled that the bandwidth remedy would be effective starting with the 2006 calendar year. Opinion No. 480 P 145.

In April 2006, as required by Opinion No. 480, Entergy submitted a compliance filing that amended the System Agreement, which allocates production costs among the Entergy Operating Companies under the bandwidth remedy. The Commission accepted it with some modifications. *La. Pub. Serv. Comm'n v. Entergy Servs., Inc.,* 117 FERC ¶ 61,203 (2006)

("Formula Rate Order"), *reh'g denied,* 119 FERC ¶ 61,095 (2007) ("Formula Rate Rehearing Order"), *aff'd, La. Pub. Serv. Comm'n v. FERC,* 341 Fed.Appx. 649 (D.C.Cir.2009) (collectively, "Formula Rate Orders").

In those filings, Entergy modified Service Schedule MSS–3 of the System Agreement to add a formula rate methodology for comparing and equalizing production costs among the Entergy Operating Companies. *See* Formula Rate Order PP 24–27, 63; Formula Rate Rehearing Order PP 48–49.

In May 2007, Entergy made its first annual bandwidth remedy filing, setting out its calculations of each Operating Companies' respective bandwidth payments. An Administrative Law Judge reviewed the filing in September 2008. *Entergy Servs., Inc.,* 124 FERC ¶ 63,026 (2008) ("Initial Decision"), *aff'd in part, rev'd in part,* 130 FERC ¶ 61,023 (2010).

On appeal from the ALJ, the Commission issued several orders that Louisiana PSC and Entergy challenge in the instant case. *Entergy Servs., Inc.,* Opinion No. 505, 130 FERC ¶ 61,023 (2010), *reh'g,* Opinion No. 505–A, 139 FERC ¶ 61,103 (2012).

First, the Commission rejected Louisiana PSC's request to review state-approved nuclear depreciation rates, finding that the filed tariff required use of the state-approved rate and that it was not subject to review or alteration during the annual proceedings. *See* Opinion No. 505 PP 170–173; Opinion No. 505–A PP 48–53.

Second, the Commission rejected Louisiana PSC's request to deviate from the

---

**2.** The Fifth Circuit dismissed and denied petitions for review of Commission orders in the second annual bandwidth proceeding, *see La. Pub. Serv. Comm'n v. FERC,* 761 F.3d 540 (5th Cir.2014) (dismissing petition in part and

denying in part), and the third annual bandwidth proceeding, *see La. Pub. Serv. Comm'n v. FERC,* 771 F.3d 903 (5th Cir.2014) (denying petition).

Energy Ratio set out in the filed tariff. Opinion No. 505 PP 133–137; Opinion No. 505–A PP 12–17.

Third, the Commission affirmed the Initial Decision's approval of certain specified exclusions of the Waterford 3 Sale–Lease-back Accumulated Deferred Income Taxes ("ADIT") from the bandwidth remedy. Opinion No. 505 P 233.

Fourth, the Commission rejected Entergy's interpretation of a 1999 capacity contract with Union Electric, finding it unreasonable to interpret the contract phrase "purchased energy expense recorded in Account 555" to include the total amount of Entergy Arkansas' bandwidth remedy payments. *Id.* PP 100–104; Opinion No. 505–A PP 30–39.

Fifth and finally, the Commission rejected Entergy's challenge to the award of interest on the bandwidth payments in *Entergy Servs., Inc.,* 139 FERC ¶ 61,104 (2012), *reh'g denied,* 145 FERC ¶ 61,046 (2013). Louisiana PSC and Entergy filed timely appeals.

## II.

We have jurisdiction pursuant to 16 U.S.C. § 825*l* (b), and we review Commission orders under the Administrative Procedure Act's "arbitrary and capricious" standard. *See* 5 U.S.C. § 706(2)(A); *Sithe/Independence Power Part., L.P. v. FERC,* 165 F.3d 944, 948 (D.C.Cir.1999). "Because issues of rate design are fairly technical and, insofar as they are not technical, involve policy judgments that lie at the core of the regulatory mission, our review of whether a particular rate design is just and reasonable is highly deferential." *Sithe/Independence Power Part.,*

165 F.3d at 948 (alteration, internal quotation marks, and citations omitted). The parties raise five issues.[3] We address them in turn.

### 1. Nuclear Depreciation

Louisiana PSC objects to the Commission's depreciation ruling regarding two nuclear power plants. But its objection comes in the wrong forum. The Commission approved the Bandwidth Formula in 2006 and 2007. *See* Formula Rate Order P 75; Formula Rate Rehearing Order P 50. That formula is the filed rate. *See La. Pub. Serv. Comm'n,* 771 F.3d at 910; *La. Pub. Serv. Comm'n,* 761 F.3d at 555. Once the rate is approved, the Commission reviews annual filings "only for compliance with the rate rule." *ChevronTexaco Exploration & Prod. Co. v. FERC,* 387 F.3d 892, 896 (D.C.Cir.2004). "An attack on the formula itself is not valid in an annual bandwidth proceeding." *La. Pub. Serv. Comm'n,* 761 F.3d at 555; *see also W. Deptford Energy, LLC v. FERC,* 766 F.3d 10, 12 (D.C.Cir.2014) (filed rate doctrine bars charging rate different than one on file with Commission).

Louisiana PSC is currently pressing its claim before the Commission in a separate proceeding pursuant to Section 206 of the Federal Power Act. *See* 16 U.S.C. § 824e(b); *La. Pub. Serv. Comm'n,* 771 F.3d at 908–09; *La. Pub. Serv. Comm'n,* 761 F.3d at 552. That is the appropriate forum. Accordingly, we deny Louisiana PSC's petition for review on this claim.

### 2. Energy Ratio

Louisiana PSC argues that the Energy Ratio definition approved in the For-

---

**3.** Entergy and Arkansas Public Service Commission intervene in support of the Commission on the first three claims. Union Electric Company and Louisiana PSC intervene in support of the Commission on the fourth is-

sue, the Union Electric contract dispute. Louisiana PSC intervenes in support of the Commission on the fifth issue, the interest on bandwidth payments dispute.

mula Rate Orders, which requires the subtraction of opportunity sales from the Energy Ratio calculation, is inconsistent with Opinion No. 480. However, Louisiana PSC waived this claim by not raising it in the initial compliance proceedings. *See* Opinion No. 505–A P 13 (Louisiana PSC "did not raise any concerns with respect to the Energy Ratio at the time the compliance filings were made."). Louisiana PSC attempts to excuse its failure by arguing that it was not given proper notice of changes in the methodology used to calculate the Energy Ratio, in contravention of 16 U.S.C. § 824d(d). But Entergy complied with the law, marking the new passages in redline. *See* Opinion No. 505–A at P 16; 18 C.F.R. § 35.10(b). Furthermore, Louisiana PSC protested Entergy's compliance filings on other issues but did not raise concerns regarding the Energy Ratio. Opinion No. 505–A at P 17. Louisiana PSC should have advanced its claim against the Energy Ratio before the formula became the filed rate. It cannot do so here. *See La. Pub. Serv. Comm'n,* 761 F.3d at 556; *see also Ark. La. Gas Co. v. Hall,* 453 U.S. 571, 578, 101 S.Ct. 2925, 69 L.Ed.2d 856 (1981).

### 3. Waterford 3 ADIT

■ Louisiana PSC argues that the Commission improperly excluded ADIT related to the sale-leaseback of the Waterford 3 nuclear facility from the Bandwidth Formula. But, as Louisiana PSC concedes, it did not seek rehearing on this issue.

The Federal Power Act bars us from considering any objection not urged before the Commission on an application for rehearing, absent reasonable grounds for the failure. *See* 16 U.S.C. § 825*l* (b). Louisiana PSC argues that it had reasonable grounds since the Commission "gave no indication in this case that it decided the

issue." But the record belies that contention. The discussion of the Waterford 3 ADIT arose repeatedly in submissions before the agency, and the ALJ ruled on this question explicitly. Since Louisiana PSC does not have a reasonable excuse for its failure to request a rehearing of its claim, we do not have jurisdiction to consider it.

### 4. Union Electric Contract

■ Entergy argues that the Commission erred in its interpretation of the 1999 Union Electric contract because the contract phrase "purchased energy expense charged to Account 555" is not ambiguous, and, even if it were, the Commission failed to address key evidence that supports Entergy's interpretation.

We accord "substantial deference" to the Commission's interpretation of utility contracts, including whether they are ambiguous. *Vt. Dep't of Pub. Serv. v. FERC,* 817 F.2d 127, 134 (D.C.Cir.1987); *Consol. Gas Transmission Corp. v. FERC,* 771 F.2d 1536, 1545 (D.C.Cir.1985).

The Commission correctly concluded that this contract provision is ambiguous, and its interpretation is reasonable. The phrase "purchased energy expense" is not defined in the contract or in the Code of Federal Regulations that describes Account 555. *See* 18 C.F.R. § 101, "555 Purchased Power." Written in 1999, the contract could not plausibly have anticipated a bandwidth remedy adopted years later. *See* Opinion No. 505 P 100.

The Commission's interpretation is "amply supported both factually and legally." *See Vt. Dep't of Pub. Serv.,* 817 F.2d at 134 (citation omitted). The Commission relied on significant testimony in the record that Union Electric did not intend "to be subject to all energy related charges." Opinion No. 505–A P 36. It considered Entergy's evidence but concluded that "the character of the bandwidth payments dem-

onstrates that these payments are not solely purchased energy expenses." Opinion No. 505 P 103. They are "a combination of both demand and energy costs for all production resources, not just purchases" *Id.* P 102; *see also* Opinion No. 505–A P 36 ("a bandwidth payment ... is not a payment for energy envisioned by" the 1999 contract).

Accordingly, we deny Entergy's petition on this claim.

5. Interest on Bandwidth Payments

█ The Commission ordered Entergy to include interest in its bandwidth remedy payments in an exercise of its remedial discretion, given the delay in finalizing the payments from the effective date of the remedy program (June 1, 2007). Entergy argues the Commission's order contradicts a previous holding without adequate explanation.

The Commission has broad remedial powers. *See La. Pub. Serv. Comm'n,* 522 F.3d at 393. We have recognized that these remedial powers extend to requiring interest to provide complete recovery. *See Anadarko Petroleum Corp. v. FERC,* 196 F.3d 1264, 1267–69 (D.C.Cir.1999), *vacated in part on reh'g on other grounds,* 200 F.3d 867 (D.C.Cir.2000).[4]

Here, it was reasonable for the Commission to include interest in the bandwidth payments to ensure full compensation, since there was a significant delay between the first bandwidth filing and the bandwidth payments. *See* 139 FERC ¶ 61,104 P 13; *see also Entergy Servs., Inc.,* 142 FERC ¶ 61,011 P 21 (Jan. 3, 2013), *reh'g denied,* 148 FERC ¶ 61,087 (2014) (requiring interest on bandwidth payments in second bandwidth proceeding for passage of time).

4. Entergy argues that the Commission's interpretation of *Anadarko* is inconsistent, but it

For the above reasons, we dismiss in part and deny in part Louisiana PSC's petition for review and deny Entergy's petition for review.

waived that argument by not raising it in its rehearing petition. *See* 16 U.S.C. § 825*l* (b).